Filed 8/1/14; part. pub. order 8/19/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re JAYDEN M., a Person Coming Under the Juvenile Court Law. | C075336 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.M. et al., <br><br> Defendants and Appellants. | (Super. Ct. No. JD232775) |

J.M. (mother) and C.M. (father), parents of the minor Jayden M., appeal from the juvenile court's order terminating parental rights. (Welf. & Inst. Code, §§ 366.26, 395; unless stated otherwise, statutory references that follow are to the Welfare and Institutions Code.) They contend (1) the Sacramento County Department of Health and

Human Services (Department) and the juvenile court erroneously removed Jayden from his prospective adoptive parents without complying with the statutory procedures set forth in sections 366.26, subdivision (n) and 361.3; (2) there is insufficient evidence Jayden was adoptable; and (3) the juvenile court violated parents' rights to effective assistance of counsel and a fair hearing and abrogated its duty to make an independent decision when it denied mother's request for a continuance of the section 366.26 hearing in light of the Department's failure to provide an updated assessment of potential adoptive placements to the court. We disagree and affirm the juvenile court's orders.

FACTS AND PROCEEDINGS

A.    *Detention and Reunification Services*

On October 19, 2012, after his father left Jayden with his paternal grandmother with an eye infection and no provision for support, the Department petitioned the juvenile court, pursuant to section 300, alleging that Jayden comes within the jurisdiction of the court because of the father's untreated substance abuse problem and history of domestic violence, and the mother's prostitution and substance abuse. The court sustained the petition and placed Jayden with his paternal aunt and uncle.

Reunification services were offered to both parents, but father failed to use the offered services, and mother only partially engaged in services. After several months of services, in February 2013, both parents expressed a desire to waive reunification services. Their reunification services were terminated at the six-month review hearing in June 2013, based on the Department's recommendation. Neither parent appealed this decision.

B.    *Jayden's Health and Behavior*

When detained, Jayden was "in good health and on target developmentally in terms of motor skills," with "a possible developmental delay or hearing deficit given that [he was] not yet speaking." Physical examinations revealed Jayden needed dental and

2

aural intervention, and he received all necessary treatment to address these concerns by June of 2013. Jayden began a course of speech therapy to address his delayed speech, and began speaking while in the care of his paternal aunt and uncle.

His caregivers (paternal aunt and uncle) noted Jayden would act out by intentionally hitting his head on the floor, would scream in the middle of the night until his aunt would soothe him, and would curl into a ball and roll himself back and forth making unusual noises. Sometimes, to get attention, Jayden would "put his face in [his aunt's] buttocks and sometimes try to put his face between her legs in her private area," and occasionally he would grab women's breasts and spank their buttocks. However, these behaviors decreased with time, and his caregivers noticed Jayden began listening and interacting more, and acting out in anger less.

At the time the selection and implementation report was prepared, Jayden was still in the care of his paternal aunt and uncle, and was in good health aside from a diagnosis of eczema. He had made progress in speech therapy, and was described as having excellent motor skills. He was eating well and sleeping through the night. Jayden was noted to be "generally adoptable . . . due to his young age and general good health." No behavioral issues were noted in the report, and he was instead described as a "happy, loving child."

### C. Placement With Paternal Aunt and Uncle

When the minor was placed with his paternal aunt and uncle in October 2012, they expressed an interest in adopting Jayden. Several months later, in June 2013, based on an assessment that the paternal aunt and uncle were meeting Jayden's needs and aiding him in his speech and motor skills development, a permanency plan suggested that Jayden remain with them to be adopted. They began a home study by an adoption agency, and again indicated their desire to adopt Jayden.

However, on October 21, 2013, the day of the scheduled selection and implementation hearing, Jayden's counsel requested ex parte that the court change its order requiring a noticed petition to move Jayden from his placement with his paternal aunt and uncle because the Department had developed concerns about the caregivers and no longer believed the placement was in Jayden's best interest. In a visit to the aunt and uncle's residence, a Department investigator and intern observed Jayden's uncle repeatedly refer to Jayden as "retarded" in Jayden's presence; saw him pull Jayden from a crouched position to standing by the ear and then restrain him by the ear when he attempted to run away; and heard him state that Jayden had been living there "too long," would grow up to ruin the uncle's credit, and was a "home-wrecker." The uncle also made Jayden sit next to him for hours while the uncle played games online, gave Jayden "extra punishment" to "toughen up the boy," bragged that the money he and his wife were receiving for Jayden's care had paid for a large flat screen television, and indicated that they could get even more money if they were able to have Jayden labeled as special needs.

Prompted by the inquiry of father's counsel, a social worker (based on her conversation with the investigator) informed the court that the paternal uncle admitted pulling Jayden's ear, but said that it was not very hard and did not leave any marks, and he denied calling Jayden retarded but admitted saying that what Jayden was doing was retarded. The social worker was unsure whether there had been long-term emotional abuse.

Over father's objection, the court granted the minor's request based on the change in circumstances, and changed Jayden's placement from a specific to general. The court continued the selection and implementation hearing to investigate other potential relative placements to ensure that the Department could locate a suitable home for Jayden.

4

*D.     Continued Selection and Implementation Hearing*

At the continued selection and implementation hearing, counsel for the Department said Jayden was going to be placed in an adoptive home that same day. Prior to selecting that placement, the Department had assessed both the maternal and paternal grandmothers (the proposed relative placements), and determined they were unacceptable because of "psychosocial issues." Jayden's counsel was supportive of terminating parental rights and of removing him from his aunt and uncle's home. Father's counsel entered "general objections," and specifically objected to the finding that the child was likely to be adopted and the recommendation that father's parental rights be terminated. Mother's counsel objected to the termination of mother's parental rights and to the court's finding of Jayden's adoptability.

Mother's counsel sought a continuance to review the assessment with mother and to determine whether an update of the recommended findings and orders was required. The social worker reported that the paternal grandmother's husband was incarcerated for 80 years for molesting a foster child that was in their home, and that it was unclear whether the grandmother was still married to him. She also reported the maternal grandmother had her son, who had sexually abused Jayden's mother previously, living with her. Therefore, the Department recommended Jayden be placed and adopted by another family with an approved adoption home study. The court denied mother's request for a continuance, concluding no information or offer of proof had been provided to indicate Jayden was not adoptable, which was the issue before the court, and that neither of the grandmothers' homes appeared appropriate for placement.

The court found clear and convincing evidence Jayden was likely to be adopted and that termination of parental rights would not be detrimental to him. The court also selected a permanent plan of adoption and ordered the Department to submit a report of

kinship evaluations of the maternal and paternal grandparents and the reasons for denying placement with those individuals post-hearing.

Both parents appeal the court's order terminating parental rights.

DISCUSSION

I

*Relative Placement*

Parents contend the court abused its discretion when it failed to comply with the procedural requirements relating to relative placement codified in sections 361.3 and 366.26, subdivision (n). We conclude section 366.26, subdivision (n) is inapplicable to the instant matter, and, regardless, parents lack standing to raise this claim because they are not the aggrieved parties.

*1.        Procedural Inapplicability of Section 366.26, Subdivision (n)*

Section 366.26, subdivision (n) permits a court, under certain circumstances, to designate a current caretaker as a prospective adoptive parent *at a hearing to terminate parental rights or thereafter*. (§ 366.26, subd. (n)(1).) Subdivision (n) of section 366.26 also requires that notice be given to caretakers who are or may be designated as prospective adoptive parents before a child is removed from their custody. (§ 366.26, subd. (n)(3).)

We construe the statute within the context of the " 'overall statutory scheme.' " (*People v. Elmore* (2014) 59 Cal.4th 121, 140.) While section 366.26 relates to the procedures for terminating parental rights, other provisions in the statutory scheme mandate procedures that apply *prior* to the termination of parental rights. (See, e.g., §§ 319 [detention], 355-356 [jurisdiction], 358, 360 [disposition], 361.5 [denial of reunification services], 366.21, 366.22 [review hearings, including termination of reunification services], 366.26 [termination of parental rights].)

6

In the context of this statutory framework, section 366.26, subdivision (n)(3)'s notice requirements do not apply when a child is removed from potential prospective adoptive parents *prior* to the termination of parental rights. Here, though the record is not explicit, it appears the minor was removed from his paternal aunt and uncle's custody prior to the continued hearing on the termination of parental rights. Thus, section 366.26, subdivision (n) is inapplicable to the instant facts. Furthermore, even if Jayden was removed from his paternal aunt and uncle concurrent with or subsequent to the selection and implementation hearing, as shown below, parents do not have standing to assert rights under section 366.26, subdivision (n).

      2.    *Lack of Standing*

"Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.]" (*In re K.C.* (2011) 52 Cal.4th 231, 236.) Thus, "[a] parent cannot raise issues on appeal which do not affect his or her own rights." (*In re Devin M*. (1997) 58 Cal.App.4th 1538, 1541; see also *In re Frank L.* (2000) 81 Cal.App.4th 700, 703 [parent must be "party aggrieved" to have standing to appeal]; *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1034-1035 (*Cesar V.*) [party's interest must be "injuriously affected" to have standing].) "A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights." (*In re K.C.*, *supra*, 52 Cal.4th at p. 238.) Here, whether the relative placement procedures were satisfied does not advance parents' termination of parental rights arguments, which are premised instead on the court's adoptability finding.

"In enacting subdivision (n) of section 366.26, the Legislature provided standing to a designated adoptive parent to petition the court for a hearing on whether the child's best interests would be served by removing the child from the caretaker's home after

termination of parental rights and before the petition of adoption has been granted." (*R.H. v. Superior Court* (2012) 209 Cal.App.4th 364, 372.)  This statutory right belongs only to the prospective adoptive parents, and not to the biological parents, whose rights are not injuriously affected by a court's failure to comply with the procedural notice requirements of section 366.26, subdivision (n).  (See *In re Desiree M.* (2010) 181 Cal.App.4th 329, 333-334 [mother lacked standing to contend the children were not properly notified of the continued section 366.26 hearing in their own case because her rights were not injuriously affected by the lack of notice].)

Similarly, parents have no standing to appeal based on section 361.3. "Section 361.3 gives 'preferential consideration' to a relative request for placement, which means 'that the relative seeking placement shall be the first placement to be considered and investigated.' " (*Cesar V.*, *supra*, 91 Cal.App.4th at p. 1033, citing § 361.3, subd. (c)(1).)  Until parental rights are terminated, if the child requires a new placement, any relative who has not been found unsuitable must again receive preferential consideration.  (§ 361.3, subd. (d); *Cesar V.*, at p. 1031.)  Once a parent's reunification services have been terminated, the parent has no standing to appeal relative placement preference issues.  (*Cesar V.*, at pp. 1034-1035.)  Here, the parents' reunification services were terminated.  Thereafter, the court heard evidence why the three proposed relative placements (paternal aunt and uncle, maternal grandmother, and paternal grandmother) were not suitable and denied placement with those relatives.  Thus, only those relatives could contest the placement denials.  (*Ibid.*)

II

*Substantial Evidence Jayden M. Was Adoptable*

Parents contend there was insufficient evidence Jayden was adoptable because the Department's assessment was not updated after Jayden was removed from placement with his paternal aunt and uncle, and because there was insufficient evidence he would be

8

adopted "in a reasonable time." We conclude the initial assessment, in the absence of any evidence that Jayden's health or behavior had deteriorated, was sufficient evidence of his adoptability, and that the presence of an identified prospective adoptive placement at the time of the selection and implementation hearing supported the conclusion that Jayden would be adopted "in a reasonable time."

A court must find, by clear and convincing evidence, that a child is likely to be adopted before terminating parental rights and selecting adoption as the permanent plan for the child. (§ 366.26, subd. (c)(1); *In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1368; *In re Tabatha G.* (1996) 45 Cal.App.4th 1159, 1164.) We review this finding for substantial evidence. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154.) "[W]e presume in favor of the order, considering the evidence in the light most favorable to the prevailing party, giving the prevailing party the benefit of every reasonable inference and resolving all conflicts in support of the order. [Citations.]" (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 576.)

"The issue of adoptability . . . focuses on the *minor*, e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor." (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) It is not necessary that the minor already be in a potential adoptive home, or even that there be a prospective adoptive parent. (*Ibid.*; see also § 366.26, subd. (c)(1) ["The fact that the child is not yet placed in a preadoptive home . . . shall not constitute a basis for the court to conclude that it is not likely the child will be adopted"].) And the prospect that the minor may have some continuing behavioral problems does not foreclose a finding of adoptability. (See *In re Jennilee T.* (1992) 3 Cal.App.4th 212, 224-225.) However, "[t]here must be convincing evidence of the likelihood that adoption will take place within a reasonable time." (*In re Brian P.* (2002) 99 Cal.App.4th 616, 624.)

Here, Jayden was three years old and was assessed as being in general good health. Jayden's only noted health issue was a diagnosis of eczema; his previous dental

and hearing issues had been addressed prior to the section 366.26 hearing. Additionally, he had made significant progress in communication and educational development, his gross and fine motor skills were "excellent," and his behavioral issues (tantrums and inappropriate touching) had apparently dissipated with time and instruction. Moreover, the Department had located a prospective adoptive placement for Jayden, where he was to be transferred immediately following the section 366.26 hearing. This is substantial evidence Jayden is likely to be adopted in a reasonable time (*In re Lukas B.*, *supra*, 79 Cal.App.4th at p. 1154) and that Jayden is adoptable.

Parents' contentions that the assessment was "stale" by the time the continued section 366.26 hearing took place and that the assessment failed to comply with the requirements of section 366.21, subdivision (i) are forfeited for failing to ask for an updated assessment or object on those bases in the juvenile court. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221-222; *In re Erik P.* (2002) 104 Cal.App.4th 395, 399.)

III

*Denial of Request for Continuance*

Mother contends the juvenile court's allegedly erroneous denial of her request for a continuance of the section 366.26 hearing to memorialize the Department's assessment of proposed relative placements (the grandmothers) and of Jayden's adoptability following his removal from his aunt and uncle's home violated her right to effective assistance of counsel and a fair hearing, and contends that by denying the requested continuance, the court abrogated its duty to make an independent decision. We note that father forfeited this contention by failing to seek a continuance or object to the denial of mother's requested continuance in the juvenile court. (*In re Dakota H.*, *supra*, 132 Cal.App.4th at pp. 221-222.)

The only prejudice mother claims resulted from the court's refusal to continue the hearing is mother's alleged inability to "present[] testimony of [the] maternal

10

grandmother's appropriateness to care for Jayden" and "to illustrate the bond Jayden shared with [the paternal grandmother]." Even if mother were to prevail on this claim, it would not impact the termination of her parental rights; thus, mother has not established good cause to continue the section 366.26 hearing.

We review a juvenile court's denial of a continuance for abuse of discretion. (*In re B.C.* (2011) 192 Cal.App.4th 129, 143-144.) We do not dispute mother's contention that "[a] trial court may not exercise its discretion over continuances so as to deprive [a party] of fundamental rights, such as the right to prepare . . . , the right to counsel, and the right to effective assistance of counsel." (See, e.g., *People v. Snow* (2003) 30 Cal.4th 43, 70 [cannot deprive defendant of reasonable opportunity to prepare through denial of continuance]; *In re Julian L.* (1998) 67 Cal.App.4th 204, 208 [court should have granted continuance for newly appointed parent's counsel to ascertain parent's wishes]; *Hughes v. Superior Court* (1980) 106 Cal.App.3d 1, 3-4 [error to force unprepared counsel to proceed with defense of criminal trial].) Nonetheless, mother has not shown in this instance that the juvenile court's denial of her request impinged her fundamental rights.

A court may grant a continuance only if it is in the best interest of the child. (§ 352, subd. (a).) Here, the requested continuance could not even potentially impact the court's determination of Jayden's adoptability, which is the court's primary focus at a section 366.26 hearing. (See *In re A.A.* (2008) 167 Cal.App.4th 1292, 1325 ["[T]he court's focus at a section 366.26 hearing is not upon who will adopt a dependent child but rather whether the child is likely to be adopted if rights are terminated. (§ 366.26, subd. (c)(1).)"].) Adoptability is determined by looking at the minor's characteristics, not the characteristics of the potential adoptive placement. (*Id.* at pp. 1311-1312; see also § 366.26, subd. (c)(1) [specific adoptive placement not prerequisite to adoptability finding].) Thus, the Department's assessment of the suitability of the maternal and paternal grandmothers for placement was irrelevant to the juvenile court's finding that

11

Jayden is generally adoptable.  Accordingly, mother did not establish good cause to continue the hearing, and the trial court did not err in denying her request.

DISPOSITION

The orders terminating parental rights are affirmed.


      HULL      , Acting P. J.


We concur:


     BUTZ     , J.


     MURRAY   , J.

Filed 8/19/14

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re JAYDEN M., a Person Coming Under the Juvenile Court Law. | C075336 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. JD232775) |
| Plaintiff and Respondent, | ORDER OF PUBLICATION |
| v. | |
| J.M. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Natalie Lindsey, Referee. Affirmed.

_____

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II and III of the Discussion.

1

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant J.M.; Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant C.M.

John F. Whisenhunt, County Counsel and Lilly C. Frawley, Deputy County Counsel for Plaintiff and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on August 1, 2014, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:


     HULL     , Acting P. J.


     BUTZ     , J.


     MURRAY     , J.