Filed 8/24/16  In re K.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re K.C., a Person Coming Under the Juvenile Court Law. | H042973 (Santa Clara County Super. Ct. No. 114JD22666) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. G.W., Defendant and Appellant. | |

G.W. (father) appeals from the juvenile court's denial of his Welfare and Institutions Code section 388[1] petition requesting that his son, K.C. (child), be placed with the paternal grandmother (grandmother).  He argues the court erred in finding there was no new evidence or change of circumstances warranting modification of the court's order placing child with his foster parents.  Father also argues the court erred in determining that removing child from his foster parents and placing him in grandmother's care was not in his best interests.   We find the juvenile court did not abuse its discretion when it denied the section 388 petition and affirm.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

BACKGROUND

1. *The Section 300 Petition*

On June 30, 2014, the Santa Clara County Department of Family and Children's Services (Department) filed an amended petition under section 300, subdivisions (b) (failure to protect) and (g) (no provision to support). Father, who the court declared to be the presumed father, had been arrested for possession of narcotics. Father had previously perpetrated intimate partner violence against the child's mother (mother). Mother was incarcerated at the time of father's arrest. The juvenile court detained child at the initial hearing and ordered that there would be no out-of-county placement pending disposition.

On July 15, 2014, the juvenile court sustained the petition. Visitation and family reunification services were ordered for both parents. The Department submitted a jurisdiction/disposition report that same day. The report indicated the Department had contacted several relatives for placement consideration and had informed each of the priority for in-county placement. The Department contacted several relatives, including grandmother, who resided in Sacramento. Grandmother said she was interested in placement and legal guardianship.

2. *Interim Review Reports*

The Department filed an interim review report on September 16, 2014. The report indicated that child had been living at an emergency satellite home, a nonconcurrent foster home. Child had some speech delays but was overall happy and healthy. Mother had been released from custody in early September. Father was still in custody. Father told the Department that he wanted child to be placed with a family member. Father also asked that child's aunt (aunt) be assessed as a possible relative placement. The Department contacted aunt and made a home visit. Aunt resided in a clean and organized two-bedroom apartment, which she shared with her three children.

On February 3, 2015, the Department filed a status review report in preparation for the six-month review hearing. The report recommended that both parents continue to receive reunification services and that child remain in his current foster home. Father was still in custody at the time. Mother had recently been informed by her former foster mother that she had an active warrant for her arrest in Mendocino County. Aunt had informed the Department that she had recently moved to a one-bedroom apartment. The Department told her that she could no longer be approved as a placement option due to foster care regulations. The Department also contacted grandmother, who still resided in Sacramento. Grandmother was working as a teacher's aide at an elementary school. Grandmother said she could not transport child to weekly visits with his parents and did not believe that it was in child's best interests to frequently travel for several hours in a car. At the time, the Department was continuing to look for a concurrent home for child.

During the six-month review hearing, the juvenile court ordered continuing reunification services to both parents. Child was to remain in the nonconcurrent foster home.

Shortly after the six-month review hearing, mother was incarcerated for the outstanding warrant and probation violation. On May 22, 2015, the court modified the visitation order for mother. No visits had occurred after May 21, 2015. Mother had moved due to issues with another inmate and was no longer in the program that had been facilitating visits. The Department had denied father's requests for visits, because he was incarcerated at the California State Prison in Represa, California. Transportation from the foster home to the prison would take approximately 2.5 hours each way, which was not authorized by the court.

3. *Twelve-Month Review, Termination of Reunification Services, and The Section 388 Petition*

In its 12-month review report, the Department indicated that child had been moved to a concurrent foster home on May 7, 2015. Child was growing attached to his new foster parent. Mother had been convicted in her criminal case and was expected to be released in March 2016. Father was expected to be released in January 2016. The report summarized the Department's previous contacts with aunt and grandmother regarding relative placement. On June 11, 2015, the Department sent notices to father and mother indicating that it was going to recommend terminating reunification services and setting a permanency plan hearing. On July 15, 2015, the 12-month review hearing was continued.

Before the 12-month review hearing was held, father's trial counsel filed a section 388 petition. Father requested the court modify its previous placement order and place child with aunt.

On August 10, 2015, the court held a combined 12-month review hearing and hearing on the section 388 petition. The juvenile court terminated reunification services for both parents and set a section 366.26 hearing. The issue of placement was reserved following a continuance on the section 388 petition.

The following month, father filed an amended section 388 petition seeking more generally to have child placed with either a relative or a nonrelative extended family member (NREFM). The petition referenced placing child with either aunt or grandmother. Father asked for an evidentiary hearing, which the court granted.

On October 16, 2015, the Department filed a report prepared for the section 388 hearing. The report recommended that child continue to reside in the concurrent foster home with the goal of a permanent plan of adoption by the current foster parent. The report summarized the Department's assessment of aunt and grandmother. Aunt had moved into a one-bedroom apartment with her three children. She asked if she could be

4

reconsidered for placement if she moved into a bigger home.  The social worker informed her that she could be considered again but she would need to be reassessed, and it may be difficult to change child's placement if he was doing well.  Grandmother, who lived in Sacramento, was unable to transport child to his weekly visits with his parents.  Grandmother asked the social worker if the Department could assist with transportation.  The social worker suggested arranging a visit with aunt, or informing the Department ahead of time if she would like to visit child in Santa Clara County.  The Department did not hear from grandmother about arranging visits.

The October 2015 report also summarized the social worker's home visit with grandmother.  Grandmother lived in a clean three-bedroom home.  Grandfather resided with family in Mississippi.  Grandmother said she was willing to provide child with a permanent home through legal guardianship, because she did not believe it was "right" that a grandparent adopts a grandchild.  Grandmother said she was willing to transport child to Santa Clara County to visit mother if required by court order.  She admitted she had not visited child.  She was, however, concerned that child may lose his connection to his family or to his ethnic heritage if he lived with nonfamily foster parents.  The social worker conducting the visit encouraged grandmother to visit child in Santa Clara County and develop a relationship with him.

In August 2015, the Department sent denial of placement letters to both grandmother and aunt.

4.  *Hearing on the Section 388 Petition*

The contested hearing on the section 388 petition began on October 9, 2015.  Father clarified that he was now requesting placement with grandmother, not with aunt.  The court heard testimony from two social workers, aunt, and grandmother.

5

### a. **Heesun Kim's Testimony**

First to testify was Department social worker Heesun Kim. Kim acknowledged that family members receive priority in terms of placement assessment. She did not recommend child be placed with grandmother, because child had no relationship with grandmother. Grandmother had never met child, and child had a strong attachment to his current foster parent. In August 2015, during the home visit, Kim told grandmother about her concerns regarding her lack of a relationship with child. Kim had not previously told grandmother that if she did not visit child she would not qualify as a potential placement option. Kim was unaware if previous social workers had told grandmother about the ramifications of her failure to visit child.

Kim explained that grandmother had asked if the Department could help arrange visits with child. Kim had told grandmother that the Department did not have the resources to regularly provide transportation for out-of-county visits with relatives. Kim had suggested that grandmother get in touch with aunt, who was visiting child regularly. Kim also told grandmother that if she was in Santa Clara County, grandmother could contact Kim and Kim could arrange a visit. In August 2014 and again in November 2014, Kim said that grandmother withdrew her interest in placement. Kim explained that grandmother made a request for placement in August 2015, which was denied based on grandmother's lack of a relationship with child.

### b. **Aunt's Testimony**

Aunt testified during the hearing. She explained that she did not seek child's placement, because she decided it was not appropriate for child to be placed with her. Aunt opined that child was attached to his foster parent. She did not believe it would be in child's best interest to remove him from his foster parent's home.

6

c. **Grandmother's Testimony**

Although she was expected to appear at the hearing on the section 388 petition, grandmother failed to appear during the first day of the proceedings and was unable to testify that day. Grandmother did not inform counsel in advance that she would not be appearing. The hearing was continued to the following week. During the next hearing date, grandmother was present and testified. Grandmother explained that she knew she was supposed to be at the previous hearing date. She did not come, because she did not believe she had a chance of getting placement.

Grandmother wanted child to be placed with her, because she wanted him to know his family and his roots. Grandmother had never met child. She had not initially visited child, because she was waiting for clearance and believed that mother would be released from custody and would be taking care of child. Later, she found out that aunt was being considered for placement. Grandmother was told that aunt was a better placement option for child, because she had a relationship with child. Grandmother was not informed when child was placed in a foster home.

Grandmother said she never turned down placement. Grandmother acknowledged that she had initially told the social worker that it may be too much for child to travel the long distance between Sacramento and Santa Clara County on a regular basis. Grandmother now stated that she would be able to transport child to visits with both father and mother. Grandmother confirmed that the social worker had told her she had to have a relationship with child if she was to be considered for placement. Grandmother explained that she was only willing to have legal guardianship over child and would not adopt him.

Grandmother received a letter in August 2015 denying her placement. She did not file a grievance regarding the denial of placement.

d. **Lindsey Philpot's Testimony**

Lindsey Philpot, a social worker, prepared an assessment dated September 8, 2015, for the case. She testified during the hearing. Her assessment was completed after reunification services were terminated. Philpot had not met child, mother, father, or the foster parent. She had not seen the way that child interacted with his foster parent. She had spoken to aunt over the phone.

Philpot explained that her report was not meant to assess child's placement with a particular relative. Rather, her report was meant to explain the reasons why a relative should get preferential consideration. She believed that child should be placed with grandmother, even though grandmother had never visited child. She believed that child's young age meant he could be transitioned to grandmother's care. Philpot asserted that children had better long-term results when placed with relatives or NREFMs.

5. *The Court's Decision on the Section 388 Petition*

After considering all the evidence, the court rendered its decision on the section 388 petition. The court noted that father bore the burden of showing there was a change of circumstance requiring a change in the court's prior orders. The court held that father did not meet his burden. Father failed to show that the Department did not fully assess or determine whether grandmother or aunt would be proper for placement in February 2015, when child was moved to foster care.

Father also asserted as a changed circumstance the fact that the Department failed to issue denial of placement letters to aunt and grandmother. The court found that father failed to support this contention. The court opined that aunt received two denial notices, one in November 2014 and another in August 2015. Additionally, grandmother had essentially withdrawn her name from consideration after she was first assessed and did not request placement again until months after child had already been put in a concurrent foster home. The court found that grandmother's change of heart about placement was

8

not a change of circumstances. The court also found that the termination of reunification services and reduction in visits with the parents did not constitute a change in circumstances.

Lastly, the court determined that even if father had met his burden to show there was new evidence or a change of circumstances, it was not in child's best interest to place him with grandmother. The court noted it did not find Philpot's testimony to be persuasive, because her opinion was not made based on the specific circumstances of this particular case. The court also determined that grandmother's absence from the first day of the hearing, coupled with her demeanor on the stand, gave the impression that she was ambivalent about caring for child. The court further found that child had developed an attachment to his foster parent and there was no compelling reason to remove child from his foster parent's care.

## DISCUSSION

On appeal, father argues that the juvenile court erred when it denied his section 388 petition. Father argues the trial court unreasonably concluded that circumstances had not changed and that moving child was not in his best interest. Before we address the merits of father's appeal, we first determine whether he has standing to appeal the denial of the section 388 petition.

1. *Standing*

Father challenges the juvenile court's decision not to place child with grandmother. The Department argues father lacks standing to challenge the denial of the section 388 petition because reunification services were later terminated.

"Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved, person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an

9

immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.] These rules apply with full force to appeals from dependency proceedings." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)

In *In re Jayden M.* (2014) 228 Cal.App.4th 1452 (*Jayden M.*), the appellate court concluded that the parents lacked standing to challenge a relative placement preference decision (§ 361.3) after their reunification services were terminated. (*Jayden M.*, *supra*, at pp. 1459-1460.) The parents did not challenge the termination of reunification services. (*Id.* at p. 1455.)

A similar decision was rendered in *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023 (*Cesar V.*). In *Cesar V.*, the father stipulated to terminate reunification services. As a result, the appellate court held that it could not see how the denial of placement with the relative would affect his interest in reunifying with his children. (*Id.* at p. 1035.) It therefore concluded that the father had no standing to appeal the relative placement preference issue himself. The relative, however, had properly placed the issue before the appellate court. The father could therefore support the relative's position with his own arguments. (*Ibid.*)

*In re Esperanza C.* (2008) 165 Cal.App.4th 1042 (*Esperanza C.*) reached a contrary result. There, the mother appealed the order denying her section 388 petition requesting that the child be placed with relatives. The appellate court found the mother had standing to appeal the denial of the section 388 petition even though reunification services had been bypassed. *Esperanza C.* explained that "[u]ntil parental rights are terminated, a parent retains a fundamental interest in his or her child's companionship, custody, management and care." (*Esperanza C.*, *supra*, at p. 1053.) At the time of the proceedings at issue, the mother's parental rights had not yet been terminated. When parental rights have yet to be terminated, placing a child can potentially alter the juvenile court's determination of the child's best interest and can affect the court's determination

10

of the appropriate permanency plan for the child. (*Id*. at p. 1054.) It can also impact the parents' legal status with respect to the child. (*Ibid*.)

We find that *Esperanza C*. is analogous to the present situation. Here, father's reunification services were terminated, but the record does not indicate that his parental rights have also been terminated. Additionally, grandmother indicated during the proceedings that she was not willing to adopt child. Thus, placement of child with grandmother could possibly impact father's legal status with respect to child when the court determines whether to terminate his parental rights. (See *In re H.G.* (2006) 146 Cal.App.4th 1, 9-10; § 366.26, subd. (c)(1)(D).) Therefore, we resolve any doubts in favor of finding that father has standing to appeal the denial of his section 388 petition.

2. *The Section 388 Petition*

a. **Standard of Review**

Section 388 permits any person having an interest in a child to petition for a hearing to change, modify, or set aside any court order previously made on the grounds of a change of circumstance or new evidence. (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) To prevail, the petitioner must demonstrate by a preponderance of the evidence that new or changed circumstances warrant a change in the prior order to promote the best interest of the child. (*In re S.J.* (2008) 167 Cal.App.4th 953, 959.) "We review the grant or denial of a petition for modification under section 388 for an abuse of discretion." (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1228.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319 (*Stephanie M.*).)

11

### b. **Changed Circumstances or New Evidence**

Father argues there were multiple changed circumstances and evidence that indicated the Department failed to implement the relative placement preference (§ 361.3), which warranted granting the section 388 petition. Father maintains the Department should have initially identified grandmother as the concurrent placement. He also argues the Department failed to offer grandmother with alternatives or assistance with transporting child to Santa Clara County for visits with his parents. He insists that grandmother should have been told that failing to visit child could affect her ability to be placed with child. Father claims he established a change of circumstances, and child should have been transitioned into grandmother's care earlier on in the dependency process. For example, father insists the circumstances changed when parental visits were no longer taking place. He further claims that the court erroneously concluded that grandmother withdrew herself from consideration when she told the Department she did not think it was good for child to spend long hours in a car being transported from Sacramento to visits with his parents in Santa Clara County.

Even if we agree with any of father's multiple arguments pertaining to the deficiencies in the dependency process, reversal is not necessarily warranted. "[R]egardless of the relative placement preference, the fundamental duty of the court is to assure the best interests of the child, whose bond with a foster parent may require that placement with a relative be rejected." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 321.)

*In re Jessica Z.* (1990) 225 Cal.App.3d 1089 (*Jessica Z.*) is instructive. There, the appellate court criticized the agency and the court for failing to assess relatives for placement during the six-month review hearing. (*Id.* at p. 1099.) The court, however, noted that the appeal was not taken from the order made at the six-month review hearing, but from an order at the 12-month review hearing. (*Ibid.*) By that time, the child had bonded with her foster family, and her foster family expressed a desire to adopt the child.

12

(*Id*. at p. 1100.)  The court then concluded it could not fault the juvenile court for determining at the hearing that it would be detrimental to remove the child from her foster parent.  (*Ibid*.)

Here, the burden was on father as the moving party to establish two required elements:  (1) a change of circumstances or new evidence, and (2) the requested modification would be in child's best interest.  (§ 388.)  Whether the modification is in child's best interest is determined at the relevant time—in this particular case, when father filed his section 388 petition.  (*Stephanie M*., *supra*, 7 Cal.4th at p. 326; *Jessica Z*., *supra*, 225 Cal.App.3d at p. 1098.)  Like in *Jessica Z*., even if there were errors leading up to the hearing on the section 388 petition, the errors do not justify rendering a decision that would not be in child's best interests.  Father must *still* show that changing child's placement was in his best interests.  The juvenile court expressly found that it did not believe changing child's placement was in his best interest, taking into consideration the relative placement preference.  As we explain below, we do not believe this was an abuse of discretion.

### c.  **Child's Best Interests**

Father argues the court erred in finding that it would not be in child's best interest to be placed with grandmother when considering the relative placement preference.  He argues that placement with grandmother would afford child a lifetime of connections with other family members.  And, citing Philpot's report, father opines that it is generally considered to be in child's best interest to be with relatives.

The Department argues the relative placement preference does not apply in this stage of the proceedings.  The Department claims that father's reunification services had already been terminated.  Therefore, there was no longer any reason to give relatives preferential treatment.  (*In re Baby Girl D*. (1989) 208 Cal.App.3d 1489, 1493-1494.)  The Department also argues that by the time the section 388 petition was filed, the

13

concurrent foster parent was entitled to a statutory preference for adoption under section 366.26, subdivision (k).

First, we note that father filed his section 388 petition before reunification services were terminated. And the Department's argument pertaining to the statutory preference for adoption under section 366.26, subdivision (k) appears premature. That preference applies during hearings to terminate parental rights. As we previously discussed, at the point of the proceedings contested on appeal, father's parental rights had yet to be terminated.

However, even if we assume the relative placement preference applies, father cannot demonstrate prejudice based on the court's failure to consider the preference. The record indicates the juvenile court expressly considered the preference when making its determination that it would not be in child's best interest to be placed with grandmother. The juvenile court correctly noted the relative placement preference is not a guarantee that child should be placed with a relative. Dependency laws are meant to strengthen and preserve a minor's family ties whenever possible. (§ 202, subd. (a).) When a child is adjudged a dependent of the court and removed from the parents' physical custody, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative . . . ." (§ 361.3, subd. (a).) Preferential consideration does not create an evidentiary presumption that placement with a relative is in the child's best interest. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 320.) Preferential consideration causes the relative to be the first placement considered and investigated. (§ 361.3, subd. (c)(1); *Cesar V.*, *supra*, 91 Cal.App.4th at p. 1033.)

Father relies on *In re R.T.* (2015) 232 Cal.App.4th 1284. *R.T.*, however, is distinguishable. In *R.T.*, both the parents and relatives appealed from various orders, including an order terminating parental rights and an order denying their motion to set aside the dispositional order for failure to consider the relative placement preference.

14

(*Id*. at p. 1292.)  There, social workers had conducted a home assessment of the relatives, but the agency never actually considered the relatives as a placement option.  (*Id*. at p. 1294.)  The appellate court noted that the agency failed to consider the relatives for placement when they first came forward, and, worse yet, the relative's home was not given good faith consideration.  (*Id*. at p. 1297.)  The relative's home studies were not even completed when the combined jurisdictional and dispositional hearing took place.  (*Ibid*.)  *R.T*. concluded the juvenile court abused its discretion, because it failed to consider if relative placement was appropriate under the applicable legal standards.  (*Id*. at pp. 1300-1301.)

Father argues that *R.T*. is dispositive, because here the Department performed only a token assessment of grandmother's home without any intention of actually changing child's placement from the concurrent foster home.  We disagree.  Unlike in *R.T*., grandmother was assessed in August 2015 when the section 388 petition was filed.  Nothing in the Department social worker's report or her comments to the court indicated the assessment was done even though the Department had already decided not to consider grandmother as a placement option.  Rather, Kim, the social worker, testified at trial that she made the determination that grandmother was not a suitable placement *after* she completed her assessment.  Kim also stated she reconsidered grandmother as a placement option.  And as we previously noted, the juvenile court expressly considered the relative placement preference when it made its ruling on the section 388 petition.

Again, we note that perhaps the juvenile court should have considered the relative placement preference in earlier proceedings, or maybe the Department should have conducted a full evaluation of grandmother's home following the purported change in circumstances (the termination of visits with parents, which eliminated the obstacle of having to drive child to Santa Clara County for visits with parents).  "However, at the hearing on the motion for change of placement, the burden was on the moving part[y] to

15

show that the change was in the best interest of the child *at that time*. Evidence that at earlier proceedings the court had not sufficiently considered placement with the grandmother was not relevant to establish that at the time of the hearing under review, placement with the grandmother was in the child's best interests." (*Stephanie M.*, *supra*, 7 Cal.4th at p. 322.) "In any custody determination, a primary consideration in determining the child's best interests is the goal of assuring stability and continuity." (*Id.* at p. 317.) "The overriding concern of dependency proceedings . . . is not the interest of extended family members but the interest of the child." (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.)

Thus, we must examine whether the trial court abused its discretion in determining that placement with grandmother was not in child's best interest. Section 361.3, subdivision (a), sets forth a variety of factors for the social worker and the court to consider whether placement with a relative is appropriate, including the best interest of the child, the wishes of the parent, the good moral character of the relative, and the nature and duration of the relationship between the child and the relative. And at the hearing on the section 388 petition, the question before the court was whether a change of placement was in child's best interest. (*Stephanie M.*, *supra*, 7 Cal.4th at p. 321.)

Father focuses on the positive factors that weigh in favor of finding that placement with grandmother would be in child's best interest. Grandmother lived in a clean, organized home. Grandmother also testified that she was ready to enroll child in the appropriate care programs and could transport him to visits with his parents. She also said she could establish boundaries with father and would not tolerate illegal activities.

The court acknowledged some of these positive factors when it decided that placing child with grandmother would not be in his best interests. By that time, the grandmother had been evaluated by the Department. She had also testified at the hearing. The court acknowledged that placing child with grandmother could foster long-term

16

relationships with other family members. Nonetheless, based on grandmother's testimony at the hearing and her failure to appear at the prior court date without an explanation, the court found her demeanor reflected a tone of ambivalence toward child.

Additionally, grandmother had not visited child. At that point, grandmother was a stranger to child. And, by the time of the hearing, child had fully transitioned to his current foster home and was bonded and attached to his current foster parent. (*In re Baby Girl D.*, *supra*, 208 Cal.App.3d at p. 1495 ["It would be contrary to Legislative policy to uproot the child and force her to adjust to a new home."].) Lastly, the court opined that it did not find Philpot's testimony regarding the general benefits of children living with relatives to be persuasive, because the testimony was not tailored to the facts of this particular case.

We find *Stephanie M.* to be instructive. "[W]hen a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " (*Stephanie M.*, *supra*, 7 Cal.4th at p. 318.)

We agree with father that there are valid arguments supporting his contention that a change of placement would have been in child's best interest. Nonetheless, the record here also supports the juvenile court's determination that removing child from the care of his foster parents to grandmother would not be in his best interest. Therefore, we cannot find the juvenile court abused its discretion when coming to this conclusion.

d. **Prejudiced by the Department's Failures**

Lastly, father argues that multiple errors were made by the Department when it failed to adequately adhere to the relative placement preference (§ 361.3) and the concurrent planning mandate (§ 358.1, subd. (b)). Father also claims the Department erred when it failed to send grandmother a formal letter of denial and an advisement of

her rights when she was initially contacted in February 2015, when she told the social worker that she did not believe it was good for child to have extended trips in the car going from Sacramento to Santa Clara County for visits.  Father maintains he was prejudiced by these errors.

Father does not explain how these purportedly prejudicial errors impacts the denial of his section 388 petition.  As we have already explained, even assuming father was prejudiced due to these deficiencies, the court properly made its determination based on whether the proposed change would be in *child's* best interest when deciding whether to grant or deny the section 388 petition.  (*Stephanie M*., *supra*, 7 Cal.4th at p. 321.) Whether father was prejudiced by these errors has no bearing on that determination.

## DISPOSITION

The order denying the Welfare and Institutions Code section 388 petition is affirmed.

_____
                                        Premo, J.



WE CONCUR:




_____
        Rushing, P.J.




_____
        Grover, J.




In re K.C.
H042973