Filed 1/4/24  In re N.B. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re N.B., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D082165 |
| Respondent, | (Super. Ct. No. J519588) |
| v. | |
| Y.J., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Michael P. Pulos, Judge.  Request for judicial notice denied; motion to augment record on appeal denied.  Appeal dismissed.

Matthew Sean Harrison, under appointment by the Court of Appeal, for Appellant.

Claudia Silva, County Counsel, Lisa M. Maldonado and Kristen M. OJeil, Deputy County Counsel, for Respondent.

No appearance for minor.

1

This appeal arises in an unusual procedural context. Y.J., a former foster caregiver for minor N.B., appeals a juvenile court order denying her Welfare and Institutions Code section 388[1] petition to modify prior orders issued in N.B.'s dependency case. After N.B. was removed from Y.J.'s care in 2019, she was placed with another foster caregiver, and Y.J. had no continuing contact. Over the course of the next three years, reunification services for, and the parental rights of, N.B.'s parents were terminated, and a permanent plan of adoption was selected for N.B.

Then, in October 2022, Y.J. filed a section 388 petition seeking to modify the court's prior orders and, in particular, sought new orders vacating the orders terminating reunification services and parental rights and ordering the resumption of reunification services for at least an additional six months. The juvenile court summarily denied her petition, finding that Y.J. had not made a prima facie showing that her requested relief was in N.B.'s best interests.

Ultimately, we do not address the merits of Y.J.'s appellate argument. Because she lacks standing to appeal the order denying the section 388 petition, we dismiss her appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

In July 2019, N.B. was removed from Y.J., her foster caregiver. There is no evidence that Y.J. challenged the removal order, and thereafter she had no further contact with N.B. N.B.'s dependency case proceeded to the permanency planning phase.

---

[1] All statutory references are to the Welfare and Institutions Code.

In the spring of 2022, apparently after learning that N.B. was available to be adopted, Y.J. claims she tried unsuccessfully to be approved for adoption. A few months later, in October 2022, Y.J. filed a section 388 modification petition asking that "[t]he original order(s) terminating parental rights . . . be vacated and reunification resumed." She also specifically requested that the court "vacate all order(s) authorizing removal or otherwise terminating reunification, and resuming reunification for six (6) months, at minimum, with subsequent hearings to establish permanent reunification." The petition alleged Y.J. had standing based on her "parental interest" because at the time of N.B.'s removal in 2019, Y.J. "was the sole caregiver, adoptive parent, and *de facto* parent for [N.B.]."[2]

On March 21, 2023, the juvenile court conducted a hearing on whether Y.J. had made a prima facie showing on her section 388 petition such that an evidentiary hearing would be warranted. The San Diego County Health and Human Services Agency (Agency) opposed her petition and argued that Y.J. lacked standing to request the relief she sought. Alternatively, the Agency argued that even if Y.J. had made a prima facie showing of changed circumstances or new evidence, she was unable to fairly allege that her requested relief was in N.B.'s best interests. In particular, the Agency represented that Y.J. had had no visits with N.B. since her removal from Y.J. in 2019. N.B.'s counsel joined in the Agency's argument and indicated that N.B. had been "doing wonderfully" and was "safe and happy" in her current caregivers' home. N.B.'s counsel also stated that the current caregivers were meeting N.B.'s very high needs.

---

[2] The petition also stated, apparently in error, that Y.J. "maintained regular visitation and contact" with N.B. such that she "would benefit from continuing the relationship [with Y.J.], and termination of that relationship would impose a detriment on [N.B.]."

Y.J.'s counsel conceded that, contrary to the petition's allegations, Y.J. was not, in fact, a de facto parent. He also clarified that Y.J. had never been designated as a prospective adoptive parent, but argued she qualified as one in 2019.

The juvenile court concluded that Y.J. appeared to have made a prima facie showing on the first prong of changed circumstances or new evidence, but could not demonstrate that her requested relief would be in N.B.'s best interests. In particular, the court noted that Y.J. was not a de facto caregiver for N.B., nor was she a current caregiver who had been designated by the court as a prospective adoptive parent pursuant to section 366.26, subdivision (n). It stated that there had been no showing it would be in N.B.'s best interests to change her current placement and resume reunification services where Y.J. had no parental rights. The judge added: "There [are] no parental rights that inured to [Y.J.]. There is no entitlement to custody. There is no entitlement to visitation. There is no entitlement to reunification services. So I think that's the . . . base of . . . the problem." Accordingly, the court summarily denied Y.J.'s section 388 petition without an evidentiary hearing.

DISCUSSION

*Y.J. Lacks Standing to Appeal*

The Agency argues, and we agree, that Y.J. lacks standing to appeal the order denying her section 388 petition.[3]

_____

[3] On July 20, 2023, Y.J. filed a request for judicial notice (RJN) asking that we consider various documents related to the Agency's decision to remove N.B. from her care in 2019 and the subsequent investigation and action by the California Department of Social Services (CDSS) regarding Y.J.'s resource family approval (RFA) certificate. Because the documents that Y.J. requests that we judicially notice were not submitted to, or considered by, the juvenile court below, we deny the RJN. (*In re Zeth S.*

4

Although orders denying section 388 modification petitions are generally appealable, "[n]ot every party has standing to appeal every appealable order." (*In re K.C.* (2011) 52 Cal.4th 231, 236 (*K.C.*).) "[T]o have standing to appeal, a person generally must be both a party of record and sufficiently 'aggrieved' by the judgment or order." (*Marsh v. Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295.) "Although standing to appeal is construed liberally, . . . only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*K.C.*, at p. 236; cf. Code Civ. Proc., § 902 ["Any party aggrieved may appeal"].) Also, "[a] person does not have standing to urge errors on appeal that affect only the interests of others. [Citation.] Accordingly, a parent is precluded from raising issues on appeal which do not affect his or her own rights." (*In re A.K.* (2017) 12 Cal.App.5th 492, 499.) In the circumstances of *K.C.*, the Supreme Court set forth the following rule regarding *parents'* rights to appeal termination orders, stating:

---

(2013) 31 Cal.4th 396, 405; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 ["[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court"].) Y.J. does not persuade us that we should make an exception here to the general rule that we review a juvenile court's order based on the record of matters which were before that court for its consideration.

Also, on September 12, 2023, we issued an order denying Y.J.'s motion to augment the record on appeal with certain documents contained in the confidential portions of the clerk's transcript, treating her motion as a request for a copy of the confidential portions of the clerk's transcript. Because we have now denied both the motion to augment and RJN, we disregard all references and citations in Y.J.'s opening brief to those documents.

"A parent's appeal from a judgment terminating parental rights confers standing to appeal an order concerning the dependent child's placement only if the placement order's reversal advances the parent's argument against terminating parental rights. This rule does not support [appellant] father's claim of standing to appeal because he did not contest the termination of his parental rights in the juvenile court. By thus acquiescing in the termination of his rights, he relinquished the only interest in [his child] that could render him aggrieved by the juvenile court's order declining to place the child with grandparents." (*K.C.*, *supra*, 52 Cal.4th at p. 238.)

In *In re Joseph G.* (2000) 83 Cal.App.4th 712 (*Joseph G.*), the court concluded that an alleged biological father who was not a party of record did not have standing to appeal an order terminating parental rights. (*Id.* at pp. 713, 716.) The court stated, "[O]nly parties of record may appeal. [Citation.] A party of record is a person named as a party to the proceedings or one who takes appropriate steps to become a party of record in the proceedings. [Citation.] A person does not become a party of record merely because his or her name and interest appear in documents filed with the court or are referenced in the judgment." (*Id.* at pp. 716–717.)

Although not directly on point, cases involving parents and current foster caregivers illustrate the limited scope of appellate standing in the context of juvenile dependency cases. Thus, in *In re P.L.* (2005) 134 Cal.App.4th 1357 (*P.L.*), the court concluded that a foster mother did not have standing to appeal an order removing the child from her home and placing the child in a prospective adoptive home. (*Id.* at p. 1359.) Although she qualified as a de facto parent, that status did not confer on her the rights of a parent or legal guardian. (*Id.* at p. 1361.) *P.L.* concluded that the foster mother "ha[d] no legal standing to complain of the decision to place the child with the new prospective couple since she has no right to custody or

6

continued placement as a mere de facto parent." (*Id*. at pp. 1361–1362.) Accordingly, the court dismissed her appeal. (*Id*. at p. 1361.) Similarly in *In re Cody R.* (2019) 30 Cal.App.5th 381 (*Cody R.*), this court dismissed an appeal of order terminating a mother's parental rights to her child and placing him with his current caregivers rather than a relative. We held that the mother did not have standing to assert the potential rights of relatives because she was not entitled to reunification services and had not challenged on appeal the order terminating her parental rights. (*Id.* at pp. 389–390; see also *In re Jayden M.* (2014) 228 Cal.App.4th 1452, 1459 (*Jayden M.*) [after termination of parental rights, parent has no standing to challenge relative placement procedures]; *In re Devin M.* (1997) 58 Cal.App.4th 1538, 1541 ["[a] parent cannot raise issues on appeal which do not affect his or her own rights"].) In *In re J.Y.* (2018) 30 Cal.App.5th 712 (*J.Y.*), the court summarized, "[A] parent generally does not have standing to raise placement issues on appeal where the parent's reunification services have been terminated. This is because decisions concerning placement of the child do not affect the parent's interest in reunification when the parent is no longer able to reunify with the child." (*Id*. at p. 717.)

Based on our review of the record, we conclude that Y.J. is not an aggrieved party with standing to appeal the order denying her section 388 petition. This is because Y.J.'s rights or interests were not injuriously affected by the order in an immediate and substantial way. (*K.C.*, *supra*, 52 Cal.4th at p. 236.) As discussed above, Y.J.'s section 388 petition requested that the juvenile court vacate its order terminating parental rights, vacate its orders removing N.B. and terminating reunification services, and order that reunification services be resumed for at least six months. But none of the orders that she sought (unsuccessfully) to have vacated

7

injuriously affected *her* rights or interests in an immediate and substantial way. (*K.C.*, at p. 236.) As the Agency asserts, Y.J. does not show that at the time she filed her section 388 petition in October 2022 or when the court denied her petition in March 2023, she had any compelling interest in N.B.'s companionship, care, custody, or management or, in particular, was entitled to reunification services. (*K.C.*, at p. 236; cf. *In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 ["[r]eunification services are typically understood as a benefit provided to parents"].) Furthermore, after she was removed from Y.J.'s foster care in 2019, N.B. was placed with another foster family and her dependency case proceeded thereafter with the termination of reunification services for her parents, the termination of parental rights, and the selection of a permanent plan of adoption for N.B. Y.J. was *not* a party of record to any of those subsequent dependency proceedings, nor were her rights or interests injuriously affected in an immediate and substantial way by any of those subsequent orders. (*Joseph G.*, *supra,* 83 Cal.App.4th at pp. 716–717; *K.C.*, at p. 236.)

Because N.B. had been removed from Y.J.'s foster care in 2019, Y.J. was *not* a de facto parent when the court issued its order denying her section 388 petition in March 2023. This point was conceded by her counsel at the hearing on her petition. In general, only a current—and not a former—foster caregiver can qualify as a de facto parent.

*In re Hirenia C.* (1993) 18 Cal.App.4th 504, cited by Y.J., is factually and procedurally inapposite. In that case, the court concluded that the appellant, who had cared for the child for over three years, was a de facto parent and had standing to file a section 388 petition to challenge a previous order after her former partner terminated appellant's visits, and thus her relationship, with the child. (*Hirenia C.,* at pp. 514–515.) Here, when she

8

filed her October 2022 petition, Y.J. had had no visits or other contact with N.B. since her July 2019 removal. Therefore, even assuming that Y.J. may have been a de facto parent (or, alternatively, a "person having an interest in" N.B.) at the time of N.B.'s removal in July 2019, she lost any such interest when she failed to timely file a writ petition challenging that removal in the juvenile court. (See § 366.26, subd. (n)(5) [order removing child from foster care placement is not appealable and must be challenged by writ petition].) In March 2023 when the court denied her section 388 petition, Y.J. lacked any existing or recent parental or other relationship with N.B. and therefore did not qualify as a de facto parent with standing to appeal the order denying her petition. Rather, she was "just another member of the 'general public.' " (*Hirenia C.*, at p. 515.)

Likewise, Y.J. had not been designated as a prospective adoptive parent at the time she filed her petition or when the court issued its order. At the hearing on her petition, Y.J.'s counsel conceded that fact, but instead argued that she *qualified* to be designated as one in 2019. However, prospective adoptive parents may be designated by a juvenile court *only after* parental rights have been terminated and a permanent plan of adoption has been selected by the court. (§ 366.26, subd. (n)(1) [at section 366.26 hearing, court "may designate a current caretaker as a prospective adoptive parent if the child has lived with the caretaker for at least six months"].) Because no section 366.26 hearing had been held or permanent plan selected for N.B. in July 2019 when she was removed from Y.J.'s care, Y.J. could not have been designated as a prospective adoptive parent even if she otherwise might have qualified to be one. As the Agency's counsel correctly argued at the hearing, "The former caregiver [i.e., Y.J.] did not meet prospective adoptive status because that status can only apply after a [section 366.26] hearing has been

9

held and parents' rights are terminated. . . . [The] parents' rights were terminated at the contested [section 366.26] hearing on September 30th, 2020."

To the extent Y.J. argues that she *qualified* to be a prospective adoptive parent at the time of her October 2022 petition or the March 2023 order, that status is an insufficient interest to show standing to appeal the order denying her section 388 petition. Only a prospective adoptive parent *designated* by the court, and not a person who merely qualifies to be so designated, has standing to appeal an order denying a section 388 petition. Y.J. does not cite any authority suggesting otherwise.

Finally, Y.J. was not N.B.'s current caregiver at the time of her petition or when the court issued its order. She does not, nor could she reasonably, argue otherwise. At most, she indicates that *in 2019* she was N.B.'s sole caregiver, which does not demonstrate she had standing to appeal the *March 2023* order denying her petition. The record clearly shows that at that later time, Y.J. was a former foster caregiver who had not cared for, or even visited, N.B. for more than three years and did not have any parental or other recognizable interest in N.B., whether as a current caregiver, prospective adoptive parent, de facto parent, or otherwise. Accordingly, Y.J.'s rights or interests were not injuriously affected by the March 2023 order in an immediate and substantial way, but, at most, only as a nominal or remote consequence of the order. (*K.C.*, *supra*, 52 Cal.4th at p. 236.)

In sum, Y.J. has no standing to appeal the March 2023 order denying her section 388 petition. Her conclusory assertions that she has standing as a former caregiver, de facto parent, and prospective adoptive parent are insufficient to show her interests or rights were injured by the March 2023

10

order in any immediate and substantial way [4] (*K.C.*, *supra*, 52 Cal.4th at p. 236.) Accordingly, we must dismiss her appeal.

DISPOSITION

The appeal is dismissed.

DATO, Acting P. J.

WE CONCUR:


DO, J.


BUCHANAN, J.

---

[4] In comparison, it is inconceivable in the circumstances of this case that a *former foster caregiver* who had not cared for or visited a child in over three years would have a greater claim of standing than a *parent* who would have no standing to appeal orders terminating reunification services, terminating parental rights, or selecting a permanent plan of adoption for the child. (Cf. *K.C.*, *supra*, 52 Cal.4th at p. 238; *Joseph G.*, *supra*, 83 Cal.App.4th at pp. 713, 716; *P.L.*, *supra*, 134 Cal.App.4th at pp. 1361–1362; *Cody R.*, *supra*, 30 Cal.App.5th at pp. 389–390; *Jayden M.*, *supra*, 228 Cal.App.4th at p. 1459; *J.Y.*, *supra*, 30 Cal.App.5th at p. 717.)