Filed 12/26/18

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re J.Y., a Person Coming Under the Juvenile Court Law. | |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>     v.<br><br>R.T.,<br><br>        Defendant and Appellant. | C082548<br><br>(Super. Ct. No. 13JVSQ2986301) |

_____

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts II and IV.

1

In re J.Y., et al., Persons Coming Under the Juvenile Court Law.

| | |
|---|---|
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>          Plaintiff and Respondent,<br><br>   v.<br><br>R.T.,<br><br>          Defendant and Appellant;<br><br>PIT RIVER TRIBE,<br><br>          Intervener and Respondent. | C084428<br><br>(Super. Ct. Nos. 13JVSQ2986101, 13JVSQ2986201, 13JVSQ2986301) |

APPEAL in case No. C082548, from a judgment of the Superior Court of Shasta County, Leonard J. LaCasse, Judge. (Retired judge of the Mendocino Super. Ct., assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed.

APPEAL in case No. C084428, from a judgment of the Superior Court of Shasta County, Gary G. Gibson, Judge. Affirmed.

Case No. C082548:

Mazanec Law and Nicholas Mazanec for Defendant and Appellant.

Rubin E. Cruse, Jr., County Counsel, David M. Yorton, Jr., Senior Deputy County Counsel, for Plaintiff and Respondent.

Case No. C084428:

Mazanec Law and Nicholas Mazanec for Defendant and Appellant.

Rubin E. Cruse, Jr., County Counsel, David M. Yorton, Jr., Senior Deputy County Counsel, for Plaintiff and Respondent.

Jedediah Parr for Intervener and Respondent.

In case No. C082548, appellant R.T., mother of minor J.Y., appeals from the juvenile court's order authorizing J.Y.'s removal from his previous caretakers and placement with the caretakers of his two siblings, minors Ja.Y. and Ju.Y., to be adopted through tribal customary adoption. She contends the removal and placement was not in the minor's best interests.

In case No. C084428, mother appeals from the juvenile court's order granting the Pit River Tribe's (the Tribe) petitions for modification, giving full faith and credit to an amended tribal customary adoption order. She argues the order must be reversed because: (1) the Tribe did not have standing to file Welfare and Institutions Code section 388[1] petitions for modification and (2) the juvenile court acted beyond its authority in giving full faith and credit to the amended tribal customary adoption order because it had already given full faith and credit to the original tribal customary adoption order. She also argues that the juvenile court erred in continuing the section 366.26 hearing beyond the timeframe provided by statute.

The two appeals were consolidated for the purposes of oral argument and decision. We conclude that mother lacks standing to raise the placement issue on appeal and reject the remaining contentions.

FACTUAL AND PROCEDURAL BACKGROUND

On September 30, 2013, Shasta County Health and Human Services Agency (the Agency) filed section 300 petitions on behalf of mother's three children, Ja.Y., Ju.Y., and J.Y., then ages five years, two years, and eleven days, respectively. The petition was based on mother's mental illness and both parents' substance abuse and domestic violence. The minors' father was a member of the Tribe and each minor is an Indian child, as defined by the Indian Child Welfare Act (ICWA). (25 U.S.C. § 1901 et seq.)

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

3

The minors were detained, with J.Y. subsequently being placed separately from his siblings. The Agency and the Tribe, however, were looking to place all three minors in an ICWA-approved home.

The juvenile court declared the minors dependents and reunification services were provided to mother.[2] Mother failed to reunify and, on October 3, 2014, reunification services were terminated. The juvenile court identified adoption as the minors' permanent plan at the February 27, 2015 section 366.26 hearing, and continued the hearing to receive reports regarding finding an adoptive family.

J.Y.'s foster parents were granted prospective adoptive parent status over the objections of the Agency and the Tribe. On August 21, 2015, the Agency filed a notice of intent to remove J.Y. from his placement and place him with his siblings. The Agency reported the Tribe was requesting the move and wanted to pursue tribal customary adoption.

On April 28, 2016, at the section 366.26 hearing, the juvenile court ordered tribal customary adoption as the minors' permanent plan. The juvenile court continued the section 366.26 hearing to August 26, 2016, to provide the Tribe time to file a tribal customary adoption order and continued the hearing on the planned placement change for minor J.Y.

On May 19 and 20, 2016, the juvenile court heard the proposed placement change for the J.Y. matter. On June 28, 2016, the juvenile court granted the proposal to place J.Y. with his siblings and, a few weeks later, issued its final order changing J.Y.'s placement. Mother filed a notice of appeal from this order in case No. C082548.

On August 26, 2016, the juvenile court gave the Tribe's initial tribal customary adoption order full faith and credit. Regarding visitation, the order read, in relevant part:

---

**2**      Father died as a result of a car accident prior to disposition.

4

"[Mother] and the children may have contact at a minimum of one time per month, for up to two hours per visit. These visits are to be supervised by one or both of the adoptive parents, or, if the adoptive parents are unwilling or unable to supervise, by a third party approved by the adoptive parents, with such approval not to be unreasonably withheld. The time, place, and manner of visitation shall be determined by the adoptive parents in light of the children's best interests. Any fee charged by a third party to supervise said visits shall be the mother's responsibility. [¶] Visitation may gradually be increased to up to four times per month, for up to two hours per visit, so long as the mother consistently attends the visits and is consistently sober during the visits. If the adoptive parents have reason to believe that the mother is not sober prior to or during any visit, the visit may be cancelled or rescheduled at the adoptive parents' discretion. Notice of such cancelled or rescheduled visits must be provided to the Tribe by the adoptive parents." The juvenile court thereafter continued the hearing (several times) to December 19, 2016, to allow the Agency to complete a home study of the proposed adoptive home.

On December 15, 2016, the Agency filed an addendum report advising that the minors were doing well in their placement and that the home study had been approved. The Agency also requested a further continuance to allow the Tribe to consider amending the tribal customary adoption order due to visitation issues that had arisen regarding visits between mother and the minors. The Tribe requested sufficient time to permit all parties the opportunity to submit evidence to the Tribe prior to the drafting of an amended tribal customary adoption order. Mother did not object.

On February 7, 2017, the Tribe filed section 388 petitions modification of a court order, asking the juvenile court to withdraw the full faith and credit given to the previous tribal customary adoption order, and instead give full faith and credit to the amended tribal customary adoption order. The relevant portion of the amended order, addressing visitation, provides as follows: "[Mother] and the children may have contact at the sole discretion of the adoptive family. If permitted, in-person contact shall be supervised,

5

unless the adoptive parents determine that supervision is not necessary to protect the children's health, safety, and well-being. The time, place, and manner of visitation shall be determined by the adoptive parents in light of the children's best interests. Any fee charged by a third party to supervise said visits shall be the mother's responsibility." The Tribe believed this clarification would encourage mother to behave more appropriately during visits.

Mother was not present at the combined hearing on the petitions for modification and the section 366.26 hearing was continued. Counsel (specially appearing) for mother communicated mother's opposition to tribal customary adoption, but did not specifically object to the implementation of the amended tribal customary adoption order (over the initial tribal customary adoption order). The juvenile court granted the Tribe's request and gave full faith and credit to the amended tribal customary adoption order. With respect to the section 366.26 hearing, the juvenile court ordered mother's parental rights modified in accordance with the amended tribal customary adoption order, set a permanent plan review hearing, and continued the minors as dependent children of the court. Mother filed a notice of appeal from these orders in case No. C084428.

DISCUSSION

I

*Removal And Placement Of J.Y.*

Mother contends the juvenile court erred in authorizing J.Y.'s removal from his previous caretakers and placement with the caretakers of his two siblings, minors Ja.Y. and Ju.Y., to be adopted through tribal customary adoption. She lacks standing to raise this issue on appeal.

"Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an

6

immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citation.]" (*In re K.C.* (2011) 52 Cal.4th 231, 236.) Accordingly, it has been held that a parent generally does not have standing to raise placement issues on appeal where the parent's reunification services have been terminated. This is because decisions concerning placement of the child do not affect the parent's interest in reunification when the parent is no longer able to reunify with the child. (*In re A.K.* (2017) 12 Cal.App.5th 492, 499; accord, *In re Jayden M.* (2014) 228 Cal.App.4th 1452, 1459-1460; *Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1035.) Although exceptions to this general rule exist when the placement may affect the decision whether to terminate parental rights (see *In re H.G.* (2006) 146 Cal.App.4th 1; *In re Esperanza C.* (2008) 165 Cal.App.4th 1042), such is not the case here.

By the time of J.Y.'s change in placement, mother's reunification services had been long since terminated. Thus, although mother's parental rights have not been terminated, the minor's placement in this case does not affect mother's interest in reunification. Additionally, tribal customary adoption had already been selected as the permanent plan. Accordingly, the minor's placement did not have the potential to alter the juvenile court's determination regarding the appropriate permanent plan (which had already been determined to be tribal customary adoption) or otherwise affect mother's interest in her legal status with respect to the minor. (C.f. *In re Esperanza C.*, *supra*, 165 Cal.App.4th at p. 1054.)

Indeed, mother offers no argument that any of her *legal rights* were affected by the court's order. Mother argues only that she is affected by the court's order because she is still afforded some visitation and has a strained relationship with the caregivers to whom J.Y. was transferred (as compared with the good relationship she had with J.Y.'s former caregivers). Mother's comfort level with the minor's caregivers is a remote consequence and does not immediately or substantially impact her legal rights or her legal status with

respect to the minor.[3] She has not established her legal rights or interests have been injuriously affected by the placement order and, therefore, lacks standing to contest the order on appeal.

II

*Section 388 Petitions Filed By The Tribe*

Mother next contends the juvenile court's order granting the Tribe's petitions for modification, and giving full faith and credit to an amended tribal customary adoption order, must be reversed because the Tribe did not have standing to file section 388 petitions for modification. We reject her contention.

Section 388 provides, in relevant part: "(a)(1) *Any parent or other person having an interest in a child who is a dependent child of the juvenile court* or a nonminor dependent as defined in subdivision (v) of Section 11400, *or the child himself or herself or the nonminor dependent through a properly appointed guardian* may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court or in which a guardianship was ordered pursuant to Section 360 for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and, if made by a person other than the child or the nonminor dependent shall state the petitioner's relationship to or interest in the child or the nonminor dependent and shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of

---

**3** Mother speculates that the new caregivers "could" "potentially" deprive her of visits in violation of court and tribal orders and thereby affect her rights. Not only is this pure speculation, the possibility of such an occurrence is a remote consequence and does not affect her legal rights. Mother either has a legal right to visit the minor on a certain occasion or she does not. If the caregivers violate that legal right, mother can seek to enforce the relevant orders.

jurisdiction.  [¶]  (2) *When any party, including a child who is a dependent of the juvenile court, petitions the court prior to an order terminating parental rights*, *to modify the order that reunification services were not needed* pursuant to paragraphs (4), (5), and (6) of subdivision (b) of Section 361.5, or *to modify any orders related to custody or visitation of the subject child*, and the court orders a hearing pursuant to subdivision (d), the court shall modify the order that reunification services were not needed pursuant to paragraphs (4), (5), and (6) of subdivision (b) of Section 361.5, *or any orders related to the custody or visitation of the child for whom reunification services were not ordered* pursuant to paragraphs (4), (5), and (6) of subdivision (b) of Section 361.5, only if the court finds by clear and convincing evidence that the proposed change is in the best interests of the child."  (Italics added.)

Mother argues that the Tribe (or Agency) is not a "person," so it may not file section 388 petitions under subdivision (a)(1).  She argues that parties that are sovereigns or entities, and not natural persons, are limited to filing those petitions set forth in subdivision (a)(2), seeking modification orders denying reunification services or orders related to custody or visitation.

We need not address mother's novel interpretation of section 388, subdivision (a)(1).  Mother concedes that tribes, agencies and departments *can* file section 388 petitions under subdivision (a)(2) as "parties" when those petitions relate to custody or visitation—and have been for decades.  (See, e.g., *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Charmice G.* (1998) 66 Cal.App.4th 659, 662.)  The subject order is a tribal customary adoption order which, necessarily, relates to the custody of the minor.  Moreover, as mother admits, the requested modification of the order related specifically to mother's visitation.  Thus, the subject order related to custody or visitation, as described in section 388, subdivision (a)(2) under which mother concedes the Tribe has standing.

9

*Full Faith And Credit Given To Amended Tribal Customary Adoption Order*

Mother also contends the juvenile court erred by giving full faith and credit to the amended tribal customary adoption order, after having already given full faith and credit to the initial tribal customary adoptions order. We disagree.

The general statutory preference when parents fail to reunify with their children is termination of parental rights and placement for adoption (§ 366.26, subd. (b)(1)), but "[i]n 2010, legislation was enacted establishing 'tribal customary adoption' as an alternative permanent plan for a dependent Indian child who cannot be reunited with his or her parents. Tribal customary adoption is intended to provide an Indian child with the same stability and permanency as traditional adoption under state law without the termination of parental rights, which is contrary to the cultural beliefs of many Native American tribes." (*In re H.R.* (2012) 208 Cal.App.4th 751, 755; see also § 366.24, subd. (a).) It is the tribe that identifies and recommends tribal customary adoption. (*In re A.M.* (2013) 215 Cal.App.4th 339, 350-351.) When a tribal customary adoption has been selected as the permanent plan, "the court, upon receiving the tribal customary adoption order will afford the tribal customary adoption order full faith and credit to the same extent that the court would afford full faith and credit to the public acts, records, judicial proceedings, and judgments of any other entity. Upon a determination that the tribal customary adoption order may be afforded full faith and credit, consistent with Section 224.5, the court shall thereafter order a hearing to finalize the adoption be set upon the filing of the adoption petition." (§§ 366.26, subd. (e)(2); see also § 366.24, subd. (c)(6).)

Mother relies on the language in section 366.26, subdivision (i)(2) to support the foundation of her argument that the tribal customary adoption order, once given full faith

10

and credit, is the equivalent of a binding final adoption order and cannot be modified.**4** Although the statute, taken in isolation, may appear to support her contention, this is not the case. (*People v. Thomas* (1992) 4 Cal.4th 206, 210 [we do not construe statutes in isolation, but rather, with reference to entire scheme of law of which is a part so the whole may be harmonized and retain effectiveness].)

Section 366.24, which sets for the procedures for tribal customary adoptions, provides that *after* the juvenile court affords full faith and credit to a tribal customary adoption order *and* the tribe approval of a home study, the minor is *then* eligible for tribal customary adoption placement. (§ 366.24, subd. (c)(8).) "[*T*]*hereafter,*" the agency is authorized to make the tribal customary adoption placement and sign the placement order. "The prospective adoptive parent or parents desiring to adopt the child *may then* file the petition for adoption." (§ 366.24, subd. (c)(8), italics added.) Section 366.26, subdivision (e)(2), provides that "[u]pon a determination that the tribal customary adoption order may be afforded full faith and credit, consistent with Section 224.5, the court shall thereafter order a hearing to finalize the adoption be set upon the filing of the adoption petition. . . . The court shall thereafter issue an order of adoption pursuant to Section 366.24." It is not until the juvenile court has issued the final decree of adoption that the tribal customary adoptive parent has all the rights and privileges of any other adoptive parent. (§ 366.24, subd. (c)(13).) And it is not until the final adoption decree

---

**4**      Section 366.26, subdivision (i)(2) states: "A tribal customary adoption order evidencing that the Indian child has been the subject of a tribal customary adoption shall be afforded full faith and credit and shall have the same force and effect as an order of adoption authorized by this section. The rights and obligations of the parties as to the matters determined by the Indian child's tribe shall be binding on all parties. A court shall not order compliance with the order absent a finding that the party seeking the enforcement participated, or attempted to participate, in good faith, in family mediation services of the court or dispute resolution through the tribe regarding the conflict, prior to the filing of the enforcement action."

has been issued that the court terminates its jurisdiction over the minor. (§ 366.24, subd. (c)(14).) Thus, it is clear that the award of full faith and credit to the tribal customary adoption order is *not* the equivalent of a final adoption order. (See *In re Sadie S.* (2015) 241 Cal.App.4th 1289, 1298.)

Mother provides no other statutory authority to support her proposition that a tribal customary adoption order cannot be modified after it has been given full faith and credit by the juvenile court. Giving full faith and credit to an order does not affect the order's finality. It merely creates a legal basis for recognizing the tribal customary adoption, despite the failure to terminate parental rights, by giving the order the same credit, force, and effect as it would if it had entered it itself. (See *In re H.R., supra*, 208 Cal.App.4th at p. 765.)

Mother does point to the California Rules of Court for support. California Rules of Court, rule 5.725(e) provides: "An order of the court terminating parental rights, ordering adoption under section 366.26 or, in the case of an Indian child, ordering tribal customary adoption under section 366.24, is conclusive and binding on the child, the parent, and all other persons who have been served under the provisions of section 294. The order may not be set aside or modified by the court, except as provided in section 366.26(i)(3) and rules 5.538, 5.540, and 5.542 with regard to orders by a referee." Despite citing only section 366.26, subdivision (i)(3) [relating to children who have not been adopted after three years] as an exception to the conclusiveness of such an order, we note that section 366.26, subdivision (e)(3) [relating to children with developmental disabilities or mental illnesses], for example, also expressly provides for the vacating or setting aside of "a final decree of tribal customary adoption."

To the extent that this rule relates to adoption orders which are not yet final or otherwise prohibits the setting aside or modification of adoption orders as expressly

provided for by statute, it is invalid.[5]  Under our state charter, the Judicial Council is authorized to adopt rules of court that are "not . . . inconsistent with statute."  (Cal. Const., art. VI, § 6, subd. (d).)  A rule of court inconsistent even with legislative intent is invalid, even absent an express legislative prohibition on the promulgation of a rule on the subject, and a rule can also be inconsistent even though it can operate harmoniously with a statute.  (*California Court Reporters Assn. v. Judicial Council of California* (1995) 39 Cal.App.4th 15, 22 [Judicial Council's rule-making authority subordinate to Legislature]; accord, *In re Robin M*. (1978) 21 Cal.3d 337, 346; cf. *Sara M. v. Superior Court* (2005) 36 Cal.4th 998, 1011 [courts not bound by Judicial Council's interpretation of statute].)

Mother argues that permitting the Tribe to modify or amend the tribal customary adoption order, even prior to finality of the adoption, diminishes the Tribe's authority and renders the Tribe's authority to govern its own relations dependent upon the state's actions.  First, mother's position is undermined by the fact that *preventing* the Tribe from obtaining full faith and credit for its amended tribal customary adoption order would be much more restrictive on the Tribe's authority.  Second, her argument assumes the court makes a discretionary ruling when giving full faith and credit to a modified tribal customary adoption order.  Indeed, once tribal customary adoption has been selected as the child's permanent plan, as it was here, the court is required to give tribal customary adoption orders full faith and credit provided statutory requirements related to notice and content of the order are met.  (*In re Sadie S.*, *supra*, 241 Cal.App.4th at p. 1302; accord, *In re H.R.*, *supra*, 208 Cal.App.4th at p. 767.)  Third, mother's position is based on the misconception that permitting the Tribe to amend the tribal customary adoption order

---

[5] We encourage the Judicial Council to consider amending this rule to eliminate any ambiguity between it and the statutory scheme related to tribal customary adoption orders.

prior to finality of the adoption means the tribal customary adoption order, which previously had been given full faith and credit, was not binding or enforceable prior to its modification. Like other orders, a tribal customary adoption order can be legally binding without being immutable. Indeed, making such an order immutable prior to the finality of the adoption (or, according to mother's position, even prior to placement of the child), would render the court and tribe *both* powerless to act in the child's best interest should something unforeseen occur before finalization of the adoption.[6] This cannot be the case.

Moreover, even if a tribal customary adoption order which has been given full faith and credit *were* to have the finality of an adoption order, we note that an adoption order is not immutable. Family Code section 7642 provides that "[t]he court has continuing jurisdiction to modify or set aside a judgment or order made under this part. A judgment or order relating to an adoption may only be modified or set aside in the same manner and under the same conditions as an order of adoption may be modified or set aside under Section 9100 or 9102." (Fam. Code, § 7642; see also Fam. Code, § 8616.5, subd. (h) [setting forth requirements for modification of postadoption visitation or contact agreement in adoption order].) Thus, we reject mother's contention that the juvenile court lacked authority to grant the Tribe's request to give full faith and credit to the amended tribal customary adoption order.

IV

*Continuances Of Section 366.26 Hearing*

Finally, we address mother's contention that the juvenile court improperly continued the section 366.26 hearing beyond the 180 days provided in section 366.24, subd. (c)(6).

---

[6] At oral argument, the Tribe and Agency agreed that the tribal customary adoption order remained modifiable by the Tribe because the final decree of tribal customary adoption was not yet final.

14

First, mother provides this court with no suggestion as to what effective relief this court can provide. The allegedly impermissible continuances have already occurred and the hearing has been held. Reversing the juvenile court's decision to continue the hearing would have no purpose. An appellate court's jurisdiction extends only to actual controversies for which the court can grant effective relief. (*In re Christina A.* (2001) 91 Cal.App.4th 1153, 1158; *In re Jessica K.* (2000) 79 Cal.App.4th 1313, 1315-1316.)

Second, we note that section 352, subdivision (a) provides the juvenile court with the discretion to "continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuance shall be granted that is contrary to the interest of the minor." Mother makes no argument, nor do we discern one from the record, that the continuances to permit completion of the home study or modification of the tribal customary adoption order were contrary to the interests of the minors. Thus, even if not moot, we would review the court's decision to grant or deny a continuance under the abuse of discretion standard and no abuse of discretion has been shown here. (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1481.)

DISPOSITION

The orders of the juvenile court are affirmed.

/s/
Robie, J.

We concur:


/s/
Blease, Acting P. J.


/s/
Renner, J.

15