Filed 12/7/20  In re J.R. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.R. et al, Persons Coming Under the Juvenile Court Law. | |
| MADERA COUNTY DEPARTMENT OF SOCIAL SERVICES/CHILD WELFARE SERVICES,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>C.R. et al.,<br><br>    Defendants and Respondents;<br><br>J.R. et al.,<br><br>    Appellants. | F081056<br><br>(Madera Super. Ct. Nos. MJP018414, MJP018415, MJP018416 & MJP018417)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Madera County.  Thomas L. Bender, Judge.

Beth A. Sears, under appointment by the Court of Appeal, for Appellants.

Regina A. Garza, County Counsel, and Ann Hanson, Deputy County Counsel, for Plaintiff and Respondent.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Respondent, S.R.

Gino de Solenni, under appointment by the Court of Appeal, for Defendant and Respondent, C.R.

-ooOoo-

In this dependency case, four minor children appeal their dispositional orders. They contend the court erred in finding that the Indian Child Welfare Act (25 U.S.C. § 1901 et seq; see also Welf. & Inst. Code, § 224 et seq.)[1] (ICWA) does not apply and erred in declining to order expedited placement under the Interstate Compact of the Placement of Children (ICPC). Appellants' mother, a respondent on appeal, agrees with appellants as to the ICWA issues and seeks a conditional reversal as to that issue. However, Mother argues the court's placement rulings should be affirmed. The father of appellants W.R., I.R., and J.R., joins in appellants' arguments on both issues and seeks reversal of the dispositional orders.

We conclude the ICWA finding must be set aside, but otherwise affirm the dispositional orders.

## FACTS

As of early November 2019, Mother S.R. ("Mother") was incarcerated on for committing several sex crimes against a minor. On November 2, 2019, a sheriff's detective and social worker conducted a walkthrough of Mother's home. The social worker located a methamphetamine pipe "full" of methamphetamine, along with a baggie with more methamphetamine in a nightstand accessible to the children. The home was "very dirty with trash," and there was not enough food considering the size of the family.

Mother's children, appellants R.B. (12 years old), W.R. (seven years old), and I.R. (five years old) were placed into protective custody that afternoon.[2] The children's maternal grandmother resides in Nevada. However, she was "in town" at the time of removal, and the children were temporarily placed in her care after the Madera County Social Services Department ("Department") made arrangements for her housing. A

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2] All ages are as of the time of removal in November 2019.

2.

fourth child, appellant J.R. (eight years old), was initially left in the care of a family friend but was subsequently placed with maternal grandmother as well.

The Department held a team decision meeting on November 4, 2019. Mother stated she "may have Cherokee ancestry," but that she does not have a tribal registration number.

## Dependency Proceedings

On November 5, 2019, the Department filed a dependency petition (§ 300) pertaining to all four children. The petition alleged each of the four children came within the provisions of subdivisions (b) and (g) of section 300.

### *Initial Detention Hearing*

An initial detention hearing was held on November 6, 2019. Carlos R. ("Father") appeared. Mother, who was in custody, was not transported to the hearing. The court continued the hearing to the next morning and asked Father if he could attend. Father said, "Yes, sir. I can." However, Father did not appear at the hearing the next day.

### *Continued Detention Hearing*

At the continued detention hearing on November 7, 2019, Mother told the court she may have Cherokee "blood" on her father's side of the family. She provided the court with her father's name, address, and phone number. Mother also said that her paternal grandmother is a member of the Cherokee tribe. Mother provided the court with her paternal grandmother's name, address, and phone number. The court directed the Department to follow up with paternal grandmother regarding her Indian ancestry.

Mother told the court she had been married to Father from 2009 to 2017. The birthdates of J.R., W.R., and I.R. show they were all born during Mother's marriage to Father. The court found Carlos R. ("Father")[3] to be the presumed father of J.R., W.R.,

---

[3] We will refer to Carlos R. as "Father" given that he is father to three of the four children. The alleged fathers of R.B. have not appeared.

3.

and I.R.  As for R.B., Mother said his father was either a man named John R. or a man named Walter, whose last name she did not know.

### *Placement Changes*

In the days that followed the detention hearing, maternal grandmother returned to Nevada, and J.R. and W.R. were moved into a foster home.  R.B. was moved to a nonrelative, extended family member.[4]  I.R. was in the care of an individual named Vickie A.

### November 14, 2019 Hearing

At a hearing on November 14, 2019, the court reminded the Department to contact maternal grandfather and maternal great-grandmother regarding Cherokee ancestry.  The court also directed the Department to assess maternal grandfather for possible temporary placement.

### *Jurisdictional Hearing*

An initial jurisdictional hearing was held on December 3, 2019.   The parties and the court discussed several issues before continuing the jurisdictional hearing to December 10, 2019.  The court directed the Department to assess Father and to place the children with him "if it's appropriate."  If placement is deemed not appropriate, the Department needed to set up a visitation plan for Father.

At the continued hearing on December 10, 2019, Mother and Father submitted on the Department's report and waived their right to a contested hearing.  The court found the allegations of the petition true and set a dispositional hearing.

The Department informed the court that it planned to place J.R. and W.R. with Father on December 16, 2019.  The Department planned to place I.R. with Father at a

---

[4] Nonrelative extended family members are adult caregivers who have an established familial relationship with a relative of the child, or a familial/mentoring relationship with the child.  (§ 362.7.)

later date, after J.R. and W.R. had adjusted to the new placement. R.B. was still placed with a nonrelative, extended family member and no change in placement was needed.

Maternal grandmother told the court that she wanted placement of I.R. and R.B. The court noted that she lived out of state, which maternal grandmother acknowledged. The court asked, "How is that going to work?" Maternal grandmother replied, "I would have to bring them back." The court said it would not place I.R. out of state.

Later, Mother's counsel objected to placement with Father. Counsel argued that Father should have to drug test before obtaining placement. Counsel also contended that Father had been convicted of terroristic threats and misdemeanor domestic violence against Mother yet had not completed any domestic violence classes.

Father said he quit his job to be a "full-time parent." The court asked Father what his source of income would be. Father replied, "Right now I'm trying – going back to school. It's not really real stable, but I'm trying to get a job…." Father's wife worked full time and said she made enough to support them.

The court noted that it needed to determine whether or not ICWA applies. The court told counsel for the Department that it need to "make sure on the ICWA issue because we [have] got a dispo[sitional hearing]." The court said that someone in the Department "needs to get on top of that," and "[t]hat needs to be done now." The Department indicated that the children's maternal grandfather "is the person to which ICWA might attach, and he's the one that the Department cannot get ahold of right now." The court observed that the children's paternal great-grandmother "still hasn't been talked to."

### *Initial Dispositional Hearing*

At the initial dispositional hearing on December 19, 2019, the Department requested a continuance. The court agreed to continue the hearing to January 9, 2019. However, the court stated that it was "disappointed" that the continuance was necessary.

The court noted that the Department should have followed up on ICWA-related issues back in November.

### *Events of January 2020*

On January 6, 2020, the Department informed the court that Father had been arrested two days prior for a parole violation. The violation concerned acts of domestic violence Father allegedly committed against his current wife. The Department "anticipated" that Father would be serving "a significant period of time in prison." Due to these recent developments, the Department was not prepared to make a recommendation as to disposition and requested a four-week continuance.

On January 6, 2020, the Department sent ICWA notices to the Cherokee Nation, Eastern Band of Cherokee Indians, and the United Keetowah Band of Cherokee. The notices indicated that the address of maternal grandmother, Debbie B., was not known. The notices also left her tribal membership information blank.

A social worker interviewed Father on January 7, 2020. Father said his children wanted to live with his current wife. Father also provided the name and telephone number of his aunt, Linda P., and his ex-wife, Frances O. for placement.

On January 8, 2020, the Department filed a supplemental dependency petition (§ 342) based on the allegations of domestic violence against Father and his subsequent incarceration.

At a hearing on January 9, 2020, the court granted a continuance of the dispositional hearing to February 26, 2020. The court proceeded to conduct a detention hearing on the supplemental petition.

Mother stated her father was willing to take placement of J.R. and W.R., but social workers said he could not have placement because he did not have bunk beds.

Minors' counsel informed the court that the Department had "initiated an ICPC for placement out of state" with grandmother in Nevada. Minors' counsel said the court "could order an expedited ICPC" so that the court would have the information it needed

for the dispositional hearing.  The court replied, "I'm not going to do that" and said that the requisite information could (and should) be in "the report" without an expedited ICPC.  The court said it would not order an expedited ICPC because the recommendation of the Department was unknown, and it was also unknown whether "people are going to be waiving FR" (family reunification services).  The court observed that "they" can still "work on it" – meaning work on the ICPC process.

Mother indicated she wanted her children placed with her aunt, who lived out of state.

The court expressed frustration that the Department had not ensured that Mother could have visits with I.R.

### *Disposition Report*

The Department filed a jurisdiction/disposition report on February 4, 2020.  The report indicated that each of the four children were placed in separate foster homes.  Each of the children had been exhibiting sexualized behaviors.

The report indicated that the Department had eliminated paternal grandfather, Craig B., as a potential placement because of "the constant presence of a person in [the] home whom the Department identified [as] a danger to the safety of the children."

The report also indicated the following:

> "There are two relatives in Nevada who are interested with placement [*sic*] the children with them, Grandmother Debbie [] and aunt Karen [S.]  [Social Worker] Forige has informed [Debbie and Karen] of the information that will be needed to [*sic*] Interstate Compact of the Placement of Children (ICPC).  As soon these [*sic*] documents from the relatives are receive by the Department, it will be sent to Nevada Child Protective Services."

The Department also indicated in the report that it would "continue to search" for an adoptive home for the children should reunification efforts fail.  The Department would "exercise due diligence" in identifying and locating relatives and mentors as mandated by Assembly Bill 938 and sections 309 and 628.

***Continued Disposition Hearing***

On February 6, 2020, the disposition hearing was continued to February 20, 2020.

On February 20, 2020, the court conducted a jurisdictional hearing as to the supplemental petition, and a dispositional hearing. Mother and Father submitted on the detention and jurisdiction reports.

Mother informed the court that she was still incarcerated but had obtained her "parenting class certificate and [her] domestic violence certificate and [her] substance abuse certificate."

I.R.'s caretaker said I.R. missed her brothers. Minor's counsel told the court that the four children, who were in four separate foster homes, wanted to live together with their aunt in Nevada. The court replied, "That's always an option. They're always doing concurrent plan [*sic*]." Minors' counsel then requested that the court "order that the evaluations start taking place out of Nevada." The court declined to issue such an order.

Counsel for the Department said he was planning to ask the social worker to start the ICPC process and begin the evaluation. Counsel said that since the case had now proceeded past jurisdiction and disposition, "we should at least start the process." The court replied, "All right. Well, there's your answer. Thanks, everybody."

In its written dispositional orders, the court found that ICWA did not apply because Mother and Father had "completed and filed form ICWA-020 … and … denied that [he/she] has any Indian heritage."

All four minor children have appealed the court's dispositional order.[5] Their notices of appeal reference the dispositional order with the notation: "Court did not order ICPC – Interstate Compact."

---

[5] Father has joined in the arguments appellants raise on appeal. Mother joins appellants as to their arguments concerning ICWA-related issues. However, she argues the court did not err with regards to ICPC and relative placement issues.

**DISCUSSION**

**I.     The Department Failed to Comply with California Statutes Concerning ICWA Compliance**

*A.     Law*

**1.     Duties of Inquiry and Further Inquiry**

The Department has an affirmative and continuing duty to inquire if any child for which a dependency petition has been filed is an Indian child.  (§ 224.2, subd. (a).)  The Department must ask the child, parents, legal guardian, extended family members, and others, whether the child is an Indian child.  (*Id.*, subd. (b).)

**a.     "Reason to know" and "Reason to believe"**

If the Department comes to have "reason to *know*" the child is an Indian child, it must send ICWA notices to the child's tribe (§ 224.2, subd. (f)), and the court must conduct the proceedings as if the child is an Indian child, until it is determined otherwise. (*id.*, subd. (i)(1).)  Such "reason to know" exists if any of the following are true:

> "(1)  A person having an interest in the child, including the child, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family informs the court that the child is an Indian child.
>
> "(2)  The residence or domicile of the child, the child's parents, or Indian custodian is on a reservation or in an Alaska Native village.
>
> "(3)  Any participant in the proceeding, officer of the court, Indian tribe, Indian organization, or agency informs the court that it has discovered information indicating that the child is an Indian child.
>
> "(4)  The child who is the subject of the proceeding gives the court reason to know that the child is an Indian child.
>
> "(5)  The court is informed that the child is or has been a ward of a tribal court.
>
> "(6)  The court is informed that either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Id.*, subd. (d).)

9.

If, however, the Department only has "reason to *believe*" that the child is an Indian child, it must conduct something referred to as "further inquiry." (former § 224.2, subd. (e).)[6] The Department must conduct the "further inquiry … as soon as practicable." (*Ibid*.)

Further inquiry includes, but is not limited to:

> "(1) Interviewing the parents, Indian custodian, and extended family members to gather the information required in paragraph (5) of subdivision (a) of Section 224.3.

> "(2) Contacting the Bureau of Indian Affairs and the State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership in, and contacting the tribes and any other person that may reasonably be expected to have information regarding the child's membership status or eligibility.

> "(3) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility. Contact with a tribe shall, at a minimum, include telephone, facsimile, or electronic mail contact to each tribe's designated agent for receipt of notices under the federal Indian Child Welfare Act of 1978 (25 U.S.C. Sec. 1901 et seq.). Contact with a tribe shall include sharing information identified by the tribe as necessary for the tribe to make a membership or eligibility determination, as well as information on the current status of the child and the case." (former § 224.2, subd. (e)(1)-(3).)

If, after further inquiry, the Department still does not have "reason to know" the child is an Indian child, the court may find that ICWA does not apply. (§ 224.2, subd. (i)(2).) This finding is subject to reversal for insufficient evidence. (*Ibid*.)

### 2.    ICWA Notices

As mentioned above, the Department must send ICWA notices if it has reason to know the child is an Indian child. (§ 224.2, subd. (f) & § 224.3, subd. (a).) The notices

---

[6] Section 224.2, was recently amended to provide that "reason to believe" exists when there is information "that indicates, but does not establish," the grounds for "reason to know" set forth in subdivision (d).)

must contain certain information listed by statute, including the names of certain relatives.  (See § 224.3, subd. (a)(5).)

### B.    Analysis

#### 1.    Further Inquiry

Appellants claim that here, the Department had a duty to perform the "further inquiry" described in section 224.2, subdivision (e).  Appellants contend the Department failed to perform that duty, observing that, as of the disposition hearing on December 19, 2019, the Department had yet to interview maternal great-grandmother.

Clearly, the Department had a duty to interview maternal great-grandmother. Mother said maternal great-grandmother was an enrolled member of a tribe.  Thus, she would clearly be a "person … reasonably … expected to have information regarding the child's membership status or eligibility."  (former § 224.2, subd. (e)(2).)  Yet, the Department cites no evidence of any information it obtained from maternal great-grandmother, such as her confirmation of Mother's claim that she is enrolled in a tribe, or clarification that she actually is not an enrolled member.

The Department responds by citing a comment from its counsel at the December 19, 2019, indicating maternal great-grandmother was "going to give all her relevant information" later that day.[7]  However, the record does not explain whether that anticipated exchange of information actually occurred or, more importantly, what information she provided.  In no way can this brief reference constitute substantial evidence that the Department actually interviewed maternal great-grandmother to obtain

---

[7] The court responded by asking, "[W]hy did it take so long?"  The court continued,

> "I mean, we are, like, six weeks into this thing.  I just don't understand why it takes six weeks when we have the information at the initial hearing, why the Department isn't on top of that, contacting her, determining if this is ICWA, giving the notice.  This is how things get messed up, how we get reversed, and it just causes problems, and frankly, I don't understand that, and that needs to be straightened out with the Department."

the required information, such as her tribal enrollment information.  (See former § 224.2, subd. (e)(1). See also § 224.3, subd. (a)(5)(C).)  Indeed, the record suggests the opposite: that this interview may not have occurred.  The ICWA notices the Department sent out mere weeks later said, "No information available" in the space for maternal great-grandmother's address.  There is no explanation in the record as to why this basic information would not have been obtained if the Department indeed spoke with maternal great-grandmother on December 19, 2019 as anticipated.[8]  Nor is there explanation as to why, if the interview did occur, the information obtained thereby was not provided to the court.

Consequently, there is insufficient evidence the Department complied with its duty of further inquiry under section 224.2.

### 2.    ICWA Notices

Appellants also find fault with the ICWA notices themselves.  Appellants observe that the notices indicated the addresses for maternal grandfather and maternal great-grandmother were "unknown" when, in fact, Mother had provided those addresses in open court on November 7, 2019.  The Department does not even address this clear deficiency in the ICWA notices.

California law requires that ICWA notices contain all known addresses of the child's great-grandparents.  (§ 224.3, subd. (a)(5)(C).)  Mother provided maternal great-grandmother's address in open court, yet the ICWA notices omitted this information.  This clearly violates the statutory mandates of section 224.3.

The Department claims that on the day of the jurisdiction/disposition hearing, Mother filed a "new" ICWA-020 form and denied having "any Indian heritage."  The

---

[8] The absence of this information is even more perplexing, given that Mother provided it in open court on November 7, 2019.

12.

Department does not cite to the record in support of this contention and has therefore forfeited it.[9] (See Cal. Rules of Court, rule 8.204(a)(1)(C).)

## II. The Court did not Abuse its Discretion in Declining to Order Expedited Placement Under the ICPC

Appellants next contend the court shirked its duty to oversee timely consideration of their placement under section 361.3. Mother and the Department claim appellants lack standing to raise this claim; and that the court did not abuse its discretion.

### A. Standing

" 'Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. [Citations.]' [Citation.]" (*In re J.Y.* (2018) 30 Cal.App.5th 712, 717.)

Mother argues her children lack standing to appeal. The Department joins in Mother's argument on this point.

First, Mother contends that because the Department was indeed investigating relative placement, the children "cannot show they have been prejudiced by the juvenile court's decision." However, that is an argument on the merits of the appeal, in that it is a

_____

[9] Earlier in its brief, the Department quoted the following sentence from Mother's brief: "On February 20, 2020, the juvenile court found that [Mother] filed a Parental Notification of Indian Status (form "ICWA-020") indicating she had no Indian heritage. [Citation.])" But this does not contain the Department's novel claim on page 6 of its brief that Mother filed an ICWA-020 form on the day of the jurisdiction/disposition hearing. Thus, the Department has made an independent representation to this court that Mother indeed filed an ICWA-020 on the day of the jurisdiction/disposition hearing indicating she has no Indian ancestry.

Additionally, the Department does not cite to any substantial evidence supporting the court's finding regarding the purported ICWA-020 form indicating no Indian heritage.

13.

contention that no prejudicial error occurred. To determine whether appellants have standing, we ask whether they have a "substantial interest" at stake in the court's ruling. Clearly, they do. (*In re Esperanza C.* (2008) 165 Cal.App.4th 1042, 1053 ["a child has a legally cognizable interest in his or her placement with a relative"].) The fact that their argument for reversal may ultimately prove meritless due to lack of prejudice is a different question. "Any other approach would improperly conflate standing to appeal with the merits." (*In re Catherine H.* (2002) 102 Cal.App.4th 1284, 1294.)

Next, Mother contends that "it is the relatives in Nevada who are the theoretically injured parties…." However, the fact that such relatives may have appellate standing does not negate the children's own standing. " 'Where the interests of two parties interweave, either party has standing to litigate issues that have a[n] impact upon the related interests….' " (*In re Caitlin B.* (2000) 78 Cal.App.4th 1190, 1193.) This is not a case where one party is claiming errors on appeal "which *only* affect another party who did not appeal. [Citations.]" (*In re Crystal J.* (2001) 92 Cal.App.4th 186, 189, italics added.) The children are asserting their own legally cognizable interest in placement with a relative. (*In re Esperanza C.*, *supra*, 165 Cal.App.4th at p. 1053.)

We conclude appellants have standing to challenge the dispositional orders as to the placement issue they raise.

### B. The Court did not Abuse its Discretion in Declining to Order an Expedited ICPC Placement

When children are removed from the physical custody of their parents, "preferential consideration shall be given to a request by a relative of the child for placement of the child with the relative…." (§ 361.3, subd. (a).) "Preferential consideration" means that the relative seeking placement shall be the first placement to be considered and investigated." (*Id.*, subd. (c)(1).)

"In determining whether placement with a relative is appropriate, the county social worker and court shall consider, but shall not be limited to, consideration" of a number of

14.

statutorily enumerated factors.  (§ 361.3, subd. (a).)  First and foremost, the court considers the best interest of the child.  (*Id.*, subd. (a)(1).)  The court must also consider the proximity of the placement to the parents and the ability of the relative to facilitate court-ordered reunification efforts with the parents, which would include visitation.  (*Id.*, subds. (a)(3) & (a)(7)(E); Fam. Code, § 7950; *In re Luke L.* (1996) 44 Cal.App.4th 670, 680.)

California has adopted the ICPC, which governs the placement of dependents in another state.  (Fam. Code, § 7900; Cal. Rules of Court, Rule 5.616(a).)  It provides that a "sending agency" (e.g., the Department), "shall not send, bring, or cause to be sent or brought into any other party state any child for placement in foster care or as a preliminary to a possible adoption unless the sending agency complies with" several requirements.  (Fam. Code, § 7901, art. III, subd. (a).)  The sending agency must provide information to the appropriate agency of the receiving state (the "receiving agency"), including certain information about the child, parents/legal guardian, proposed placement and the reasons for pursuing interstate placement.  (*Id.*, subd. (b).)  The sending agency must receive notice from the receiving agency indicating that the proposed placement "does not appear to be contrary to the interest of the child" before the child may be sent to the receiving state.  (*Id.*, subd. (d).)

In certain circumstances, California dependency courts "may" designate a proposed interstate placement as an "expedited placement."  (Cal. Rules of Court rule, 5.616(h) ("Rule 5.616").)  Doing so triggers a requirement that the ICPC administrator of the receiving state must make a determination within 20 days as to whether the placement is approved.  (Rule 5.616(h)(5).)

Before ordering an expedited placement, the court must make several findings, including that the child meets at least one of the following criteria:

1. It is an "unexpected dependency" due to the sudden or recent incarceration, incapacitation, or death of a parent or guardian.

15.

2.      The child is 4 years of age or younger.

3.      The child is part of a group of siblings who will be placed together, where one or more of the siblings in 4 years of age or younger.

4.      The child, or one of the children in her or her sibling group, has a substantial relationship with the proposed placement.

5.      The child is in an emergency placement.  (Rule 5.616(h)(2).)

Appellants contend the court erred in denying their request for an expedited placement.

### 1.      Standard of Review

We are not aware of any published decisions that establish an appellate standard of review specific to orders denying expedited placements under the ICPC.  Generally, "placement orders are reviewed under the abuse of discretion standard; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse."  (*In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1420-1421.)  We see no reason to depart from that standard here.  Rule 5.616 provides that courts "may" order expedited placement, which strongly suggests a discretionary decision.  Therefore, we will apply the abuse of discretion standard and ask whether the court's decision "exceeded the bounds of reason."  (*Sabrina H.*, at p. 1421.)

### 2.      Analysis

We conclude the court's ruling did not exceed the bounds of reason.  As noted above, once the children were detained from Father's care on January 6, 2020, the Department was required to begin considering placing the children with a relative.  (§ 361.3.)[10]  The record showed that consideration began almost immediately.  On January 9, 2020, appellant's counsel informed the court that the Department "initiated an

---

[10] This duty was triggered earlier for R.B., who is not Father's child.  He was removed from his Mother's custody back on November 2, 2019.  He was initially placed with a relative – maternal grandmother.  Later, he was moved to a nonrelative extended family member.  However, the record shows that the Department has begun investigating placement with maternal relatives.

ICPC for placement out of state in Nevada." The disposition report dated February 6, 2020, indicated that the Department informed the two Nevada relatives interested in placement "of the information that will be needed to [comply with the] Interstate Compact of the Placement of Children (ICPC)." The report indicated that "as soon as these documents from the relatives are receive by the Department, it will be sent to Nevada Child Protective Services."

Thus, there is ample evidence that the Department began the ICPC process quickly after relative placement consideration became necessary for I.R., J.R. and W.R. However, appellants argue the court should have ordered an *expedited* ICPC process. The court declined to do so, observing that the Department can continue to work on the ICPC process even if an expedited placement is not ordered. Moreover, at the time of the court's ruling, it was unknown whether "people are going to be waiving FR" (i.e., family reunification services). The court was entirely correct to consider this factor in exercising its discretion. When considering relative placement, courts *must* consider the proximity of the placement to the parents and the ability of the relative to facilitate court-ordered reunification efforts with the parents, which would include visitation. (§ 361.3, subds. (a)(3) & (a)(7)(E); Fam. Code, § 7950; *In re Luke L.*, *supra*, 44 Cal.App.4th at p. 680.) Here, the relatives lived in another state, and placing the children with them would likely frustrate these reunification efforts. The court reasonably concluded that expedited placement was not appropriate, considering that it might not order placement with the out-of-state relative at all if reunification services were ordered and visitation provided to the parents. None of this exceeded the bounds of reason, and we will uphold the trial court's decision on this point.

Appellants note that they were eligible for expedited placement under the criteria set forth in Rule 5.616(h)(2). However, this merely shows that the court could have exercised its discretion differently by granting expedited placement. It does not establish

17.

that the court exceeded the bounds of reason by exercising its discretion in the way it did, by denying the request for expedited placement.

Appellants contend that even if the court did not err in declining to order expedited placement, the court improperly failed to direct the Department to initiate the ICPC process for the maternal great aunt. But no such order was necessary, as the Department had already begun the ICPC process.[11]

Appellants also point to the court's comment that placement with the great-aunt was "always an option." They argue that consideration of relatives is not an option, it is mandated by section 361.3. But the court was saying *placement* with the great-aunt was a possibility, not that the Department could choose to not even *consider* the great-aunt for placement. And on that point, the court was correct. The relative placement preference is not a relative placement guarantee. (*In re Joseph T.* (2008) 163 Cal.App.4th 787, 798.)

Finally, appellants argue that the "out-right" rejection of maternal grandmother's request for placement was improper. Appellants argue that maternal grandmother's request moved her to the head of the line for placement of R.B. However, the record shows the Department *is* considering her for placement and has requested ICPC-related documents from her. And, as noted above, the court was within its discretion to decline to *expedite* this process.

Appellants also cite section 16501.1, subdivision (d)(1) which requires that case plans describe the children's placement and reasons for the placement decision. The statute also requires that the case plan first consider placement with relatives. (§ 16501.1,

---

[11] Appellants argue the ICPC process had not yet begun. They point to a comment from the Department's counsel on February 20, 2020, saying the Department "should at least start the process" (which suggests the process had not begun by February 20, 2020). However, as was made clear by appellant's counsel at the January 9, 2020, hearing, the Department had already begun the ICPC process prior to counsel's apparently mistaken comment. In any event, counsel was clearly indicating that the Department would move forward with the ICPC process, further showing that an express order to that effect was unnecessary.

subd. (d)(1).)  Appellants observe that the case plan attached to the jurisdiction/disposition report dated February 6, 2020, does not discuss placement with relatives.  We agree that omission is improper.  (See § 16501.1, subd. (d)(1).)  However, the *report* to which the case plan was attached *does* discuss relative placement in several places.  While this discussion should have also been included in the case plan itself, we cannot find that omission prejudicial given that it was included in the report.

## DISPOSITION

The juvenile court's finding that ICWA does not apply is reversed.

The matter is remanded to the juvenile court with directions to instruct the Department to complete ICWA inquiry and proper notice.  (See *In re Damian C.* (2009) 178 Cal.App.4th 192, 200.)  In all other respects, the dispositional orders are affirmed.  (*Ibid.*)  The court shall advise the parents of their petition rights under 25 United States Code section 1914.  (*In re Damian C.*, at p. 200.)


POOCHIGIAN, Acting P.J.

WE CONCUR:


DETJEN, J.


SMITH, J.

19.