Filed 1/26/21

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ATLAS CONSTRUCTION SUPPLY, INC., <br><br>     Cross-complainant and Appellant, <br><br>     v. <br><br> SWINERTON BUILDERS, <br><br>     Cross-defendant and Respondent. | D076426 <br><br><br> (Super. Ct. No. 37-2017-00029572-CU-PO-CTL) |

APPEAL from orders of the Superior Court of San Diego County, Richard E.L. Strauss, Judge. Affirmed; appeal dismissed in part.

Dunn Desantis Walt & Kendrick, Kevin DeSantis, Zachariah H. Rowland, David D. Cardone; Greines, Martin, Stein & Richland, Laurie J. Hepler and Geoffrey B. Kehlmann for Cross-complainant and Appellant.

G&P Schick, Malcolm D. Schick and Sean E. Smith for Cross-defendant and Respondent.

I

INTRODUCTION

A construction worker was killed when a concrete column formwork toppled over at a construction worksite. The worker's surviving family

members (hereafter, plaintiffs) brought this wrongful death action against general contractor Swinerton Builders (Swinerton) and formwork supplier Atlas Construction Supply, Inc. (Atlas). Atlas cross-complained against Swinerton for equitable indemnity, contribution, and declaratory relief.

The trial court entered summary judgment in favor of Swinerton as to plaintiffs' wrongful death complaint. Thereafter, Swinerton—in lieu of seeking entry of judgment on the summary judgment order—settled with plaintiffs. Under the settlement, plaintiffs agreed to dismiss their case against Swinerton and Swinerton waived its costs. Swinerton then requested, and the trial court granted, a good faith settlement determination under Code of Civil Procedure section 877.6.[1] Apparently under the shared belief that the good faith settlement determination barred Atlas's cross-complaint against Swinerton, Atlas and Swinerton stipulated to the dismissal of Atlas's cross-complaint against Swinerton.

Atlas appeals the summary judgment order in favor of Swinerton, the good faith settlement determination, and the dismissal of Atlas's cross-complaint. Atlas asserts the trial court erroneously ruled that Atlas lacked standing to oppose Swinerton's motion for summary judgment and, on that basis, the court did not consider a meritorious opposition brief filed by Atlas. Atlas argues that if the court had considered the opposition brief, it is reasonably likely the court would have denied Swinerton's motion for summary judgment, plaintiffs and Swinerton never would have settled plaintiffs' wrongful death complaint, the court never would have made the good faith settlement determination, and Swinerton and Atlas never would have stipulated to the dismissal of Atlas's cross-complaint.

---

[1]     All further statutory references are to the Code of Civil Procedure.

2

We conclude Atlas was not aggrieved by the trial court's exoneration of Swinerton in the wrongful death action. Therefore, Atlas lacks standing to appeal the summary judgment order in favor of Swinerton. As for the good faith settlement determination and the dismissal of Atlas's cross-complaint, we conclude Atlas waived its challenge to those orders by failing to make substantive legal arguments specific to those orders. Therefore, we dismiss the appeal insofar as it pertains to the summary judgment order and affirm the remaining challenged orders.

II

BACKGROUND

A

*The Accident*

Swinerton was the general contractor for the construction of a residential development in San Diego. It hired subcontractor J.R. Construction, Inc. (J.R. Construction) to perform concrete work and subcontractor Brewer Crane & Rigging, Inc. (Brewer) to perform crane work for the project. J.R. Construction, in turn, rented a concrete column formwork—a vertical structure that wraps around metal rebar and holds liquid concrete in place—from Atlas for use during the project. The formwork was approximately 10 feet tall and weighed 300 to 400 pounds.

One day at the construction worksite, J.R. Construction employee Marcelo Develasco, Sr. and another crewmember climbed the formwork to modify its size. Brewer had placed the formwork at the worksite and the formwork was positioned upright and unsupported by braces. The crewmember stepped off the formwork and Develasco's weight caused the unsecured formwork to topple over. Develasco was attached to the formwork by a clip and suffered fatal injuries when the formwork fell over.

3

B

*The Lawsuit*

Plaintiffs filed a wrongful death action against Atlas, Swinerton, and Brewer.[2] They asserted products liability causes of action against Atlas and a negligence cause of action against all three defendants.

Atlas filed a cross-complaint against Doe defendants for equitable indemnity, contribution, and declaratory relief. Atlas later substituted Swinerton as one of the Doe defendants.

C

*Summary Judgment*

Swinerton moved for summary judgment as to plaintiffs' complaint on grounds that the common law *Privette* doctrine precluded Swinerton from being held liable to plaintiffs. Under the *Privette* doctrine, the hirer of a contractor generally may not be held liable in tort when the contractor is hired to do inherently dangerous work and an employee of the contractor suffers work-related injuries due to the contractor's negligence. (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 698–700 (*Privette*).)

Plaintiffs opposed Swinerton's motion for summary judgment. They argued the *Privette* doctrine was inapplicable because they did not allege the negligence of a contractor caused its *own* employee to suffer injuries; instead, they alleged the negligence of a contractor (Brewer) harmed an employee of a *different* contractor (J.R. Construction).

Atlas filed a separate brief opposing Swinerton's motion for summary judgment. It asserted an argument plaintiffs did not raise—that Swinerton could be held liable to plaintiffs under an exception to the *Privette* doctrine

---

2    Plaintiffs separately sought and obtained recovery under J.R. Construction's workers' compensation policy.

4

established in *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198. Under the *Hooker* exception, a hirer may be held liable for injuries suffered by a contractor's employee when the hirer retains control over safety conditions at a worksite and the hirer's retained control affirmatively contributes to the employee's injuries. (*Id.* at p. 202.)

The trial court issued a tentative order granting Swinerton's motion for summary judgment. It rejected plaintiffs' argument concerning the *Privette* doctrine and expressly declined to consider the opposition brief filed by Atlas. In pertinent part, the court found Atlas lacked standing to oppose summary judgment because an order "granting the motion [for summary judgment] would not necessarily extinguish" Atlas's cross-complaint against Swinerton.

After issuing its tentative order, the court directed the parties to file supplemental briefs on whether Atlas had standing to oppose Swinerton's motion for summary judgment. In its supplemental brief, Atlas made two arguments as to why it had standing. First, Atlas argued it was adverse to Swinerton because it had substituted Swinerton as a Doe defendant in its cross-complaint. Second, Atlas claimed it was adverse to Swinerton because the entry of summary judgment in favor of Swinerton would preclude Atlas from attributing fault to Swinerton during trial under a provision of the summary judgment statute, section 437c, subdivision (*l*). Swinerton did not contest Atlas's standing to oppose its motion for summary judgment.

On March 1, 2019, the court issued a final order granting Swinerton's motion for summary judgment. The court adhered to its tentative ruling that the *Privette* doctrine precluded Swinerton from being held liable to plaintiffs. It also adhered to its tentative ruling that Atlas lacked standing to oppose the summary judgment motion. As to that issue, the court found there was no "specific authority for the proposition that [Atlas] should be considered

5

adverse to Swinerton for the purposes of [the] motion." The court noted the summary judgment statute did not require a court to "consider multiple oppositions to a motion for summary judgment" because the statute "identifies 'opposition' in the singular." The court opined it was "not reasonable for a trial judge to be required to consider multiple separate statements and multiple oppositions in a single summary judgment motion."[3]

D

*Good Faith Settlement Determination*

Swinerton did not seek entry of judgment on the order granting summary judgment. Rather, it negotiated a settlement with plaintiffs whereby plaintiffs agreed to dismiss their claims against Swinerton with prejudice and Swinerton agreed to waive its costs totaling $5,349.63, subject to a good faith settlement determination.

Swinerton filed a motion for a good faith settlement determination under section 877.6, subdivision (a)(1), as well as dismissal of Atlas's cross-complaint under section 877.6, subdivision (c). In its motion, Swinerton argued it had no proportionate liability to plaintiffs based on the *Privette* doctrine and, furthermore, Swinerton did not affirmatively contribute to the fatal incident—i.e., the *Hooker* exception did not apply. Swinerton argued other factors weighed in favor of the good faith settlement determination as well, including the amount of the settlement (a waiver of costs totaling $5,349.63), the minimal liability Swinerton would face even if plaintiffs were to successfully appeal the summary judgment ruling, and the absence of any collusive, fraudulent, or tortious conduct in connection with the settlement.

---

[3] The court found Brewer also lacked standing to oppose Swinerton's motion for summary judgment and therefore declined to consider an opposition brief filed by Brewer. That ruling is not part of this appeal.

Atlas opposed Swinerton's motion for a good faith settlement determination. It estimated plaintiffs' recovery at trial would be approximately $2.7 million. For many of the same reasons set forth in Atlas's summary judgment opposition, Atlas argued Swinerton could be held liable to plaintiffs for a least a portion of plaintiffs' recovery under the *Hooker* exception. Atlas estimated Swinerton would be responsible for 75–85% of the recovery—i.e., $2–2.3 million. Based on the disparity between plaintiffs' estimated recovery against Swinerton and the consideration plaintiffs received in the settlement (a waiver of costs totaling $5,349.63), Atlas argued the motion for a good faith settlement determination should be denied.

The trial court granted Swinerton's motion for a good faith settlement determination in tentative and final orders dated May 3, 2019, and June 14, 2019, respectively. The court declined to dismiss Atlas's cross-complaint, however, finding Swinerton did not meet its "burden [of establishing] that [Atlas's] claims in the cross-complaint [were] barred by the granting of the good faith settlement" determination.

Thereafter, Swinerton and Atlas executed a stipulated request for dismissal of Atlas's cross-complaint against Swinerton. The stipulation stated the June 14, 2019 order granting Swinerton's motion for a good faith settlement determination "eliminated any and all rights Atlas may have had to recover under [the] cross-complaint," and "there [was] no legal basis for a trial of Atlas'[s] cross-complaint against Swinerton …." On July 1, 2019, the court dismissed Atlas's cross-complaint without prejudice, per the parties' stipulation.

On July 23, 2019, plaintiffs filed a request for dismissal with prejudice of their wrongful death complaint as to Swinerton. The court entered the requested dismissal with prejudice.

7

III

DISCUSSION

A

*Jurisdictional Issues*

Atlas challenges three orders in this appeal: (1) the order granting Swinerton's motion for summary judgment, dated March 1, 2019; (2) the good faith settlement determination, dated June 14, 2019; and (3) the stipulated order dismissing Atlas's cross-complaint, dated July 1, 2019. Swinerton filed a motion to dismiss the appeal on grounds that we lack jurisdiction to consider the challenged orders. In the following section, we address each challenged order in reverse chronological order.[4]

1

*Dismissal of Atlas's Cross-Complaint*

We begin with the stipulated order dismissing Atlas's cross-complaint against Swinerton. Atlas asserts the order should be deemed an appealable judgment because it is a final adjudication of Atlas's rights against Swinerton. Swinerton claims the order should not be deemed an appealable judgment because Atlas is still a defendant in plaintiffs' underlying wrongful death action. We conclude Atlas has the better argument.

" 'Where a defendant cross-complains against a third party or against a codefendant, the dismissal of the cross-complaint is a final adverse adjudication of the cross-complainant's rights against a distinct party, and

---

[4] Atlas's notice of appeal also purported to appeal the tentative good faith settlement determination, dated May 3, 2019, and the order dismissing plaintiffs' complaint against Swinerton, dated July 23, 2019. However, the tentative good faith settlement determination is a nonappealable tentative order (*Estate of Sapp* (2019) 36 Cal.App.5th 86, 99), and Atlas has abandoned its appeal as to the order dismissing plaintiffs' complaint by failing to make arguments regarding the appealability or merits of the dismissal order.

the order is appealable.' " (*Paragon Real Estate Group of San Francisco, Inc. v. Hansen* (2009) 178 Cal.App.4th 177, 181, fn. 1; see *Herrscher v. Herrscher* (1953) 41 Cal.2d 300, 303 ["Where the parties to the cross-complaint are not identical with the parties to the original action, the order amounts to a final adjudication between the cross-complainants and cross-defendants and is appealable."]; *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 945, fn. 3 (*Cahill*) [dismissal of cross-complaint after good faith settlement determination was appealable].)  The dismissal of a cross-complaint can be a final adjudication of the rights of the parties to the cross-complaint even where, as here, one of those parties is still a party to the original action.[5]  (See *Cahill*, at p. 945, fn. 3; *Paragon*, at p. 181, fn. 1.)

As Swinerton notes, Atlas remains a defendant in plaintiffs' underlying wrongful death action.  However, the order dismissing Atlas's cross-complaint resolved all pending causes of action between cross-complainant Atlas and cross-defendant Swinerton.  Though the trial court denominated the order as a dismissal without prejudice, the parties did not stipulate to toll the statutes of limitations applicable to the cross-complaint or otherwise agree to facilitate future litigation of the cross-complaint.  Thus, the dismissal order is sufficiently final for purposes of the one final judgment rule.  (*Abatti v. Imperial Irrigation Dist.* (2012) 205 Cal.App.4th 650, 665–667.)  Because the order disposed of all causes of action between the parties to the cross-complaint, and those parties did not preserve the voluntarily-dismissed cross-

---

[5]    *Oak Springs Villas Homeowners Association v. Advanced Truss Systems Inc.* (2012) 206 Cal.App.4th 1304 does not suggest otherwise.  In that case, the court concluded a good faith settlement determination is not an appealable interlocutory ruling.  (*Id.* at p. 1307.)  Here we address a different question—that is, whether an order dismissing all pending claims between the parties to a cross-complaint may be deemed a final judgment.

complaint for future litigation, the dismissal order is appealable as a final adjudication of Atlas's rights against Swinerton.  (§ 904.1, subd. (a)(1).)

2

*Good Faith Settlement Determination*

Next, we consider the appealability of the good faith settlement determination.  Atlas claims the good faith settlement determination is an intermediate ruling that is reviewable as part of Atlas's appeal from the order dismissing its cross-complaint, which we deem to be a final appealable judgment for the reasons just discussed.  Swinerton contends the good faith settlement determination cannot be appealed because Atlas did not seek writ review of the good faith settlement determination under section 877.6, subdivision (e).  Once again, we conclude Atlas has the better argument.

Section 877.6, subdivision (e)—a provision in the good faith settlement determination statute—permits an aggrieved party to seek immediate appellate review of a good faith settlement determination by filing a petition for writ of mandate.  It states as follows:  "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate.  The petition for writ of mandate shall be filed within 20 days after service of written notice of the determination, or within any additional time not exceeding 20 days as the trial court may allow.  [¶] (1) The court shall, within 30 days of the receipt of all materials to be filed by the parties, determine whether or not the court will hear the writ and notify the parties of its determination….  [¶]  (3) The running of any period of time after which an action would be subject to dismissal [for delay of prosecution] … shall be tolled during the period of review of a determination pursuant to this subdivision."  (§ 877.6, subd. (e).)

There is a split of authority as to whether section 877.6, subdivision (e) supplies the sole method by which a party may seek appellate review of a good faith settlement determination. One line of authority has its genesis in *Main Fiber Products, Inc. v. Morgan & Franz Insurance Agency* (1999) 73 Cal.App.4th 1130 (*Main Fiber*). In *Main Fiber*, the court noted that the policy underpinning section 877.6, subdivision (e) is to encourage settlement by guaranteeing finality for the settling tortfeasor. (*Id.* at p. 1135.) The court reasoned "[t]he same policy reasons which prompted the Legislature to afford parties aggrieved by good[-]faith determinations the *right* to review by writ of mandate also militate in favor of a construction of the statute which renders a pretrial petition for a writ of mandate the *exclusive* means of review." (*Ibid.*, italics added.) Additionally, the court noted that other features of the statute—including the default 20-day deadline for a party to seek writ review, the 30-day deadline for a court to decide whether it will hear the matter, and the tolling of time periods for dismissal for want of diligent prosecution—suggested the Legislature intended good faith settlement determinations "to be finally resolved before the trial between the remaining litigants." (*Main Fiber*, at p. 1136; see *O'Hearn v. Hillcrest Gym & Fitness Center, Inc.* (2004) 115 Cal.App.4th 491, 499 [following *Main Fiber*].)

In *Cahill, supra,* 194 Cal.App.4th 939, our court parted ways with *Main Fiber* and sided with a competing line of authority standing for the proposition that the writ procedure set forth in section 877.6, subdivision (e) is *not* the exclusive means by which to seek appellate review of a good faith settlement determination. We noted section 877.6, subdivision (e) states an aggrieved party "may" petition for writ review and concluded the statute's use of the word "may" demonstrated that writ review is "a *permissive*, not mandatory, means of challenging a good faith settlement determination ...."

11

(*Cahill*, at p. 955; see *Maryland Casualty Co. v. Andreini & Co. of Southern California* (2000) 81 Cal.App.4th 1413, 1420 [section 877.6, subdivision (e)'s "use of the words '*may* petition,' together with '*shall* be filed,' suggests that a writ petition might not be the exclusive means of reviewing a good faith settlement determination."].)  In addition, we cited a legislative analysis of a bill that formed the basis for section 877.6, subdivision (e), in which the Senate Judiciary Committee stated the bill would have no impact on a party's ability to appeal a good faith settlement determination.  (*Cahill*, at p. 953.)  Based on these and other considerations, we concluded writ review under section 877.6, subdivision (e) is not the sole means by which a good faith settlement determination may be challenged.  (*Id.* at pp. 955–956.)

Swinerton attempts to distinguish this case from *Cahill* on grounds that the party seeking review of the good faith settlement determination in *Cahill* timely sought and was denied writ review under section 877.6, subdivision (e) before it later appealed the good faith settlement ruling as part of an appeal from an order deemed to be a final judgment.  (*Cahill*, *supra*, 194 Cal.App.4th at pp. 945, 956.)  Here, by contrast, Atlas never sought writ review of the good faith settlement determination.

We believe this is a distinction without a difference.  A close reading of *Cahill* discloses that in that case, the appealing party's filing of an earlier petition for writ of mandate was not determinative of whether it was entitled to challenge the good faith settlement determination on appeal from the order deemed to be a final judgment.  Instead, after considering the "language and legislative history" of section 877.6, subdivision (e), we broadly concluded the appealing party was entitled to appeal the good faith settlement determination because "the availability of writ review [in section 877.6, subdivision (e)], or the summary denial of a writ petition, does

12

not preclude an appeal after a final judgment." (*Cahill*, *supra*, 194 Cal.App.4th at pp. 955–956.) To the extent Swinerton reads *Cahill* as implying that the filing of a petition for writ of mandate is a prerequisite to a challenge of a good faith settlement determination after a final judgment, Swinerton misinterprets *Cahill*, which imposes no such requirement.

In accordance with *Cahill*, we conclude Atlas is not barred from appealing the good faith settlement determination merely because it did not file a petition for writ of mandate under section 877.6, subdivision (e).

## 3

### *Summary Judgment Order*

Finally, we assess whether Atlas may appeal the summary judgment order, which Atlas contends is an interlocutory ruling reviewable on appeal from the order dismissing its cross-complaint. Atlas asserts it was aggrieved by the summary judgment order because, "[a]s a co-defendant of Swinerton, Atlas shared an interest with plaintiffs in establishing Swinerton's negligence." It claims it was also aggrieved by the grant of summary judgment because, according to Atlas, it will be unable to attribute fault to Swinerton during the wrongful death trial. Swinerton claims we lack jurisdiction to consider the summary judgment order because Atlas was not aggrieved by the ruling. This time, we conclude Swinerton has the better argument.

Section 902, the statute governing a party's standing to appeal, states in pertinent part as follows: "Any party *aggrieved* may appeal in the cases prescribed in this title." (Italics added.) "For purposes of section 902, a party is aggrieved if an order 'injuriously affect[s]' its rights or interests. [Citation.] The injured interest must be 'recognized by law' [citation], and the injury must be 'immediate, pecuniary, and substantial'; it cannot be nominal or be 'a

13

remote consequence of the judgment.' [Citation.] The injured interest also must belong to the party: 'a would-be appellant "lacks standing to raise issues affecting another person's interests." ' " (*Six4Three, LLC v. Facebook, Inc.* (2020) 49 Cal.App.5th 109, 115; see *In re J.Y.* (2018) 30 Cal.App.5th 712, 717 [" 'An aggrieved person … is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision.' "].) Standing to appeal is a jurisdictional requirement and may not be waived. (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 888, fn. 7.)

"It is well settled in California … that the exoneration of a joint tortfeasor from liability does not 'aggrieve' the other individually liable tortfeasor(s) insofar as that word is understood to apply to a party's standing to appeal." (*Holt v. Booth* (1991) 1 Cal.App.4th 1074, 1080 (*Holt*); see, e.g., *Diamond Springs Lime Co. v. American River Constructors* (1971) 16 Cal.App.3d 581, 608 (*Diamond Springs*) ["[A] defendant having independent liability has no standing to appeal from a judgment exonerating his codefendant, even where a potential right of contribution exists."]; *Cook v. Superior Court* (1969) 274 Cal.App.2d 675, 679 (*Cook*) ["A defendant who is individually liable is not aggrieved by the exoneration, even though erroneous, of a codefendant."]; *Swails v. General Electric Co.* (1968) 264 Cal.App.2d 82, 86 (*Swails*) ["It is established law that a defendant who is himself liable is not aggrieved by the exoneration of a codefendant. [Citations.] This rule was not changed by the enactment of [the statutory scheme] relating to contribution among joint tortfeasors."].) Applying these principles here, we conclude Atlas was not aggrieved by the summary judgment order, which merely exonerated Atlas's codefendant, Swinerton.

14

Atlas claims it was aggrieved because the summary judgment order went beyond mere exoneration of a codefendant—it "caused the dismissal of Atlas'[s] cross-complaint" for equitable indemnity, contribution, and declaratory relief. This argument is unavailing, as "an individually liable tortfeasor is not aggrieved by the exoneration of a joint tortfeasor even when that exoneration defeats what would otherwise be an actionable cause for contribution." (*Holt*, *supra*, 1 Cal.App.4th at p. 1080; see also *Diamond Springs*, *supra*, 16 Cal.App.3d at p. 608; *Cook*, *supra*, 274 Cal.App.2d at p. 679; Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2020) ¶ 2:289 ["Whereas contribution rights between joint contract debtors exist 'prior to and quite apart from the judgment' [citation], *contribution rights do not arise in favor of joint tortfeasors until they have paid a joint judgment or more than their pro rata share* [citation]*; as such, individually liable joint tortfeasors are not 'aggrieved' for appeal purposes by the exoneration of a codefendant.*"], italics added.)

In any event, the dismissal of the cross-complaint was not "caused" by the summary judgment ruling, as Atlas contends. After the court granted summary judgment in favor of Swinerton, Swinerton and plaintiffs entered into an intervening settlement that became the subject of a good faith settlement determination. It was *that* determination that resulted in the stipulated order dismissing Atlas's cross-complaint, as the parties themselves stated in their request for dismissal of the cross-complaint. Thus, while the court's summary judgment ruling likely influenced plaintiffs and Swinerton's settlement, as well as the good faith settlement determination, the summary judgment order—which was never reduced to a judgment—did not "cause" the dismissal of Atlas's cross-complaint in any direct sense.

15

As an alternative argument, Atlas claims it was aggrieved by the summary judgment order because, under section 437c, subdivision (*l*), the summary judgment order will preclude Atlas from attributing fault to, or commenting on, the absence or involvement of Swinerton during trial. Section 437c, subdivision (*l*), the statutory provision on which Atlas relies, provides as follows: "In an action arising out of an injury to the person or to property, if a motion for summary judgment is granted on the basis that the defendant was without fault, no other defendant during trial, over plaintiff's objection, may attempt to attribute fault to, or comment on, the absence or involvement of the defendant who was granted the motion."

We are not convinced the mere possibility of future harm to Atlas renders Atlas aggrieved for purposes of section 902. In short, Atlas's argument rests on a series of ifs—(1) *if* the wrongful death action proceeds to trial, plaintiffs may move in limine to exclude Atlas from attributing fault to, or commenting on, the absence or involvement of Swinerton; (2) *if* the plaintiffs file this anticipated motion in limine, the trial court may find that its prior order granting Swinerton's motion for summary judgment under the *Privette* doctrine was a determination that Swinerton was "without fault" (§ 437c, subd. (*l*)), and the court may grant plaintiffs' motion in limine on that basis; and (3) *if* Atlas is unable to attribute fault to, or comment on the absence of, Swinerton during trial, it may be found liable to plaintiffs.

Assuming without deciding that an erroneous ruling precluding a defendant from attributing fault to, or commenting on, the absence or involvement of a codefendant can in some cases injure the defendant, it is clear such an injury is too uncertain and remote in this case. Atlas may never suffer the alleged injury of which it complains if, for example, the case is dismissed or otherwise resolved prior to trial. Or plaintiffs may not file a

16

motion in limine pursuant to section 437c, subdivision (*l*). Or they may move in limine, but the trial court may deny the motion on grounds that Swinerton's dismissal under the *Privette* doctrine was not a determination that Swinerton was "without fault" (an issue that has not been briefed and on which we express no opinion). Or if the court grants the motion in limine, Atlas may prevail in the wrongful death action and owe plaintiffs nothing at all. (See *Cook*, *supra*, 274 Cal.App.2d at p. 679 ["[O]ne who is not himself liable cannot be prejudiced by a judgment for or against a codefendant."].)

As each of these hypothetical scenarios has not come to pass, Atlas's alleged injury is mere speculation. It is neither immediate nor substantial, as required by section 902. Thus, Atlas does not have standing to appeal the summary judgment order in favor of its codefendant, Swinerton. (See *Pacific Merchant Shipping Assn. v. Board of Pilot Commissioners etc.* (2015) 242 Cal.App.4th 1043, 1062 ["The [defendant] cites no authority that a person *potentially* liable for satisfaction of a judgment against another party has standing to appeal the judgment. In fact, the authority is to the contrary."]; *Hensley v. Hensley* (1987) 190 Cal.App.3d 895, 899 ["Although the [defendants] will have to defend the case on its merits, the possibility of an adverse judgment in the future does not make them 'aggrieved' parties."].)

## 4

### *Conclusion*

In light of our determination that we have jurisdiction to review the dismissal of Atlas's cross-complaint and the good faith settlement determination, we deny Swinerton's motion to dismiss the appeal to the extent it is based on those orders. However, Atlas does not have standing to appeal the summary judgment order. Therefore, we grant Swinerton's

17

motion to dismiss the appeal insofar as it pertains to the summary judgment order.  (See *In re D.M.* (2012) 205 Cal.App.4th 283, 294–295.)

B

*Merits*

In the previous section, we concluded we have jurisdiction to consider the merits of two orders—the good faith settlement determination and the stipulated dismissal of Atlas's cross-complaint against Swinerton.

Our consideration will be short.  Atlas devotes substantial attention in its appellate briefing to the merits of the order granting Swinerton's motion for summary judgment, yet virtually no attention to the merits of the good faith settlement determination or the dismissal of its cross-complaint.  In its opening appellate brief, for instance, Atlas argues only that the good faith settlement determination and cross-complaint dismissal order must be reversed because the dismissal order "flowed directly from the good-faith settlement determination, which flowed directly from the order granting summary judgment."  In its reply brief, it claims its "arguments about the good-faith settlement ruling are necessarily coupled with its arguments about summary judgment because the good-faith settlement ruling flowed directly from the erroneous summary judgment."

Atlas does not address the factors a trial court must consider when determining whether to make a good faith settlement determination.  It does not apply each of those factors to the facts of the present case.  It does not discuss the evidence the parties filed in support, or in opposition, to Swinerton's motion for a good faith settlement determination.  Nor does it reference the standard of review we should apply to the trial court's good faith settlement determination or the dismissal of its cross-complaint.

18

Atlas's bare assertion that we must reverse these orders based on the alleged flaws in the summary judgment ruling is not substantive legal analysis. Because Atlas has not provided substantive legal analysis, reasoned argument, or citations to authority *as to the good faith settlement determination and the dismissal of its cross-complaint*, we conclude Atlas has waived its claims of error as to these orders. (*Cahill, supra*, 194 Cal.App.4th at p. 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "]; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 656 ["It is the appellant's responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf."].)

## IV

## DISPOSITION

The appeal is dismissed to the extent it concerns the summary judgment order. In all other respects, the challenged orders are affirmed. Swinerton is entitled to its costs on appeal.

McCONNELL, P. J.

WE CONCUR:


HALLER, J.


AARON, J.

19